# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | | |
|---|---|---|
| **In re:** | § § § § | |
| **RED FORK (USA) INVESTMENTS, INC.** | § § § | **CASE NO. 18-70116** |
| **EASTOK PIPELINE, LLC,** | § § § | **CASE NO. 18-70117** |
| **Debtors.** | § § § § | **CHAPTER 11** |
| | § | **(Joint Administration Requested)** |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 507, (III) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b), AND (V) GRANTING RELATED RELIEF**

**To the Honorable United States Bankruptcy Judge Tony M. Davis:**

Comes now Red Fork (USA) Investments, Inc. and EastOK Pipeline, LLC, the debtors and debtors-in-possession in the Cases styled and numbered *In re Red Fork (USA) Investments, Inc.*, Case Nos. 18-70116, 18-70117, and file this *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 507,(III) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362, (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(B), and (V) Granting Related Relief,* (the "Motion") and in support thereof, respectfully represent as follows:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the Western District of Texas, Midland Division (the "Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3. Red Fork is an oil and gas exploration and production company. Red Fork has approximately 48,000 acres leased in Pawnee, Noble, Payne and Wagoner counties in Oklahoma. Red Fork is headquartered in Midland, Texas. EastOK is a wholly owned affiliate. EastOK is the owner and/or operator of infrastructure including pipelines and salt water disposal wells ("SWDs") on some of the same leased acreage. EastOK also has its headquarters in Midland, Texas.

4. Prior to the Petition Date (as hereinafter defined), the Debtors' intent was to maintain its interests in mineral lease acreage and undeveloped mineral interests and develop a multi-year drilling inventory. The Debtors' original business strategy was growth-oriented—with the goal to discover, develop and/or acquire more reserves on an annual basis than are produced. The decline in commodity prices, significant operational disruptions and litigation expenses have forced a change in this strategy. Debtors are now seeking to sell some or all of their assets to a potential purchaser with the ability to pursue development of the Debtors' existing leases.

5. On August 7, 2018, (the "Petition Date"), the Debtors commenced the Cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Cases, and no committees have been appointed or designated.

6. Additional information about the Debtors business, capital structure, and the circumstances leading to the commencement of the Cases can be found in the *Declaration in Support of the Chapter 11 Petitions and First Day Motions* (the "Declaration"), filed concurrently herewith.

## Emergency Consideration

7. The Debtors request emergency consideration of this Motion. The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and the success of these chapter 11 cases. As discussed in detail below and in the First Day Declaration (as defined below), any delay in granting the relief requested could hinder the Debtors' operations and cause immediate and irreparable harm. As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' first day hearings.

## Relief Requested

8. By this Motion, the Debtors request entry of an interim order substantially in the form attached hereto as **Exhibit 1** (the "Interim Order"): (1) authorizing the Debtors pursuant to Sections 105, 361, 361, 363, and 507 of the Bankruptcy Code to use cash collateral, as such term is defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other collateral on an interim basis in accordance with the Budget (subject to the Permitted Variance) on an interim basis in accordance with the budget attached to the Interim Order as **Exhibit A** (the "Budget"); (2) granting adequate protection described herein to the Debtors' prepetition loan agent and secured lender, Guggenheim Corporate Funding, LLC ("Guggenheim" or the "Secured

Creditor"), for the use of the Prepetition Collateral, including Cash Collateral; (3) modifying the automatic stay imposed by Section 362 of title 11 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the final order (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders"); and (4) holding an interim hearing to consider the relief sought in the motion and entry of the proposed Interim Order; (5) scheduling a final hearing to consider entry of the Final Order; and (6) granting any related relief.

**Concise Statement of the Material Terms of the Interim Order[1]**

9. In accordance with Bankruptcy Rule 4001, below is a summary of the material proposed terms of the Debtors' use of Cash Collateral.[2]

| Summary of Material Terms | | Location |
|---|---|---|
| **Cash Collateral to be Used** | The Interim Order authorizes the Debtors to use Cash Collateral through the Termination Date only in accordance with the Budget and the Interim Order. | Interim Order, ¶¶ 3–8 |
| **Parties With Interest in Cash Collateral** | Guggenheim Corporate Funding, LLC, and any other lenders that are party to the Credit Agreement. | Interim Order, ¶ F(i) |
| **Purpose for Use** | The Debtors require the immediate use of Cash Collateral to fund the Debtors' ordinary course business operations and administer and preserve the value of the Debtors' estates. Without such authorization for the continued use of Cash Collateral, the Debtors would be unable to pay postpetition operating expenses and obtain goods and services necessary to carry on their businesses in a manner that | Interim Order, ¶ G |

---

[1] Capitalized terms used in this Concise Statement but not defined herein shall have the meanings ascribed to such terms below.

[2] To the extent the terms and conditions listed herein conflict or are inconsistent with those in the Interim Order, the terms and conditions of the Interim Order shall control. All terms not otherwise defined below shall have the meanings ascribed to them in the Interim Order.

| Summary of Material Terms | | Location |
|---|---|---|
| | will avoid irreparable harm to the Debtors, their estates and their creditors. Therefore, the relief requested in the Motion is necessary, essential, and appropriate to prevent immediate and irreparable harm to the Debtors' estates and to allow the continued operation of the Debtors' businesses and the management and preservation of their property, including the Prepetition Collateral. | |
| **Cash Management** | The Debtors will each open and maintain the DIP Accounts and close all other deposit accounts of the Debtors. The Debtors will immediately segregate, remit and deposit all Cash Collateral in the Debtors' possession, custody or control, or which the Debtors may receive in the future, into the DIP Accounts. All Cash Collateral collected by the Debtors will be immediately transferred by the Debtors to the DIP Accounts. The Debtors will be prohibited from withdrawing or using funds from the DIP Accounts except as provided for in the Budget, the Interim Order, or pursuant to further order of the Court. The Loan proceeds will be transferred to the DIP Accounts on a twice-monthly basis.<br><br>The Debtors shall at all times maintain at a minimum aggregate balance of $150,000.00 in the Red Fork DIP Account. | Interim Order, ¶¶ 5–6 |
| **Budget and Weekly Reporting Provisions** | The Debtors are authorized to use Cash Collateral during the Interim Period exclusively for the purposes of and to the extent described in the Budget and the Interim Order. During the Interim Period, the sum of all actual amounts expended for the current week and all previous weeks in the Budget cannot exceed the sum of all budgeted disbursements for such cumulative period.<br><br>The Debtors' aggregate expenditures under the Budget shall be tested on both a monthly and a cumulative basis. On or before 4:00 p.m. (central) on September 4, 2018, the Debtors shall prepare and deliver to the Prepetition Agent the Budget Variance Report. | Interim Order, ¶¶ 3-4 |

| Summary of Material Terms | | Location |
|---|---|---|
| | The Budget may be amended from time to time by written agreement between the Prepetition Agent and Debtors, with notice to any Statutory Committee, without further order of the Court; provided that the amended budget shall be filed with the Court and, if no objections are filed to such amended budget within three (3) business days, such amended budget shall become the Budget under the Interim Order. | |
| **Transfers to Fund the Budget** | Upon entry of the Interim Order (and provided no Event of Default has occurred), the Debtors shall be authorized to request from the Prepetition Agent a twice-monthly transfer. The request will be delivered according to the Funding Period. | Interim Order, ¶ 7 |
| **Adequate Protection** | The Debtors propose to provide the Secured Creditor with the following forms of adequate protection:<br><br>**Adequate Protection Liens**. In addition to all existing security interests and liens granted to or for the benefit of Secured Creditor in the Prepetition Collateral (including the Cash Collateral), the Secured Creditor is granted the Adequate Protection Liens of the same extent, validity, and priority as the Prepetition Liens in the Prepetition Collateral (including the Cash Collateral) on all the Adequate Protection Collateral. The Adequate Protection Liens shall not attach to any assets upon which security may not be lawfully granted or, pending the entry of the Final Order, proceeds of Avoidance Actions.<br><br>**Adequate Protection Superpriority Claims**. The Prepetition Agent, for and on behalf of the Prepetition Lenders, is also granted the Adequate Protection Superpriority Claim as permitted under Bankruptcy Code §§ 503(b) and 507 for and to the extent of any Diminution in Value for the interests of the Prepetition Agent and the Prepetition Lender in Prepetition Collateral.<br><br>**Adequate Protection Payments**. The Prepetition Agent and Prepetition Lenders are also granted the Adequate Protection Payments for their reasonable | Interim Order, ¶¶ 9, 10, 11, 18 |

| Summary of Material Terms | | Location |
|---|---|---|
| | and documented fees, costs and expenses incurred in connection with the Cases (including, without limitation, the fees and expenses of Haynes and Boone, LLP as counsel for the Prepetition Agent).<br><br>**Asset Disposition Program**. The Debtors shall effectuate an asset disposition program in accordance with the terms set forth in the Interim Order. | |
| **Perfection of Replacement Liens** | The Adequate Protection Liens are deemed valid, binding, enforceable and perfected upon entry of the Interim Order and no further notice, filing, recording or order shall be required to validate or perfect the Replacement Liens. | Interim Order, ¶ 15 |
| **Modification of Automatic Stay** | The automatic stay is modified to effectuate the terms of the Interim Order, including without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition Agent may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Agent and Prepetition Lenders under the Interim Order; (d) authorize the Debtors to pay, and the Prepetition Agent to retain and apply, any payments made in accordance with the terms of the Interim Order; and (e) permit the Prepetition Agent, upon the occurrence of a Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare any obligations owed on account of a Diminution in Value owed to the Prepetition Agent and Prepetition Lenders to be immediately due and payable; (iii) setoff and apply immediately any and all amounts in accounts maintained by the Debtors with the Prepetition Agent and Prepetition Lenders against any obligations owed on account of a Diminution in Value owed to the Prepetition Agent and Prepetition Lenders; and (iv) take any other actions or exercise any other rights or remedies permitted under the Interim Order. | Interim Order, ¶ 14 |

| Summary of Material Terms | | Location |
|---|---|---|
| **Stipulations of the Debtor** | The Debtors stipulate to the facts surrounding: (i) the Prepetition Credit Facility, (ii) the Prepetition Obligations, (iii) the Prepetition Liens and Collateral, (iv) the Validity of Prepetition Obligations, (v) the Validity, Perfection and Priority of Prepetition Liens, and (vi) Cash Collateral. | Interim Order, ¶¶ F(i)-F(vi) |
| **Release** | Subject only to the Challenge Period, the Debtors release, acquit, and forever discharge the Released Parties from the Released Claims. | Interim Order, ¶ 24 |
| **Challenge Period** | A party in interest, including any Statutory Committee if any, may commence a Challenge within sixty (60) days after the entry of the Interim Order. | Interim Order, ¶ 25 |
| **Termination** | The Debtors' right to use Cash Collateral under the Interim Order shall terminate on the earlier to occur of the following: (a) the date that is thirty (30) days after the Petition Date, if the Debtors have not obtained entry of a Final Order in form and substance acceptable to the Prepetition Agent on or before such date; (b) the occurrence of an Event of Default under the Interim Order; (c) the closing of a sale of all or substantially all assets of the Debtors; and (d) confirmation of a chapter 11 plan in these Cases. | Interim Order, ¶ 8 |

**Description of Secured Lender's Secured Debt**

10. On February 10, 2015, Red Fork, as borrower, entered into that certain Amended and Restated Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, together with all exhibits thereto, the "Credit Agreement") the lenders from time to time party to the Credit Agreement (the "Prepetition Lenders"), and Guggenheim Corporate Funding, LLC, as administrative agent and collateral agent for the Prepetition Lenders (in such capacity, the "Prepetition Agent"). Pursuant to the Credit Agreement, the Prepetition Lenders

made certain loans and advances to Red Fork pursuant to and in accordance with the terms and conditions of the Credit Agreement (collectively, the "Loans").

11. Pursuant to that certain Subsidiary Guaranty Agreement, dated as of November 6, 2013 (as amended, restated or otherwise modified from time to time, the "Guaranty"), executed by Red Fork, EastOK, and Prairie Gas Gathering, LLC[3] (collectively, the "Guarantors), the Guarantors unconditionally, absolutely and irrevocably guaranteed the payment and performance of all Secured Obligations (as such term is defined in the Credit Agreement) arising under the Credit Agreement and the other Indebtedness Documents (as defined in the Interim Order).

12. The Credit Facility is secured by the Mortgages and Security Agreement (as such terms are defined in the Interim Order). Pursuant to the Mortgages and Security Agreement, the Debtors granted the Prepetition Agent for and on behalf of the Prepetition Lenders, liens and security interests in and upon substantially all of the Debtors' existing and after-acquired assets, as more particularly set forth in the Mortgages and Security Agreement (the foregoing together with any and all other property of the Debtors pledged to secure the Prepetition Obligations, collectively, the "Prepetition Collateral"). The liens and security interests granted in the Mortgages and Security Agreement, together with any other security interests, liens, mortgages, pledges, assignments and other interests in the Prepetition Collateral granted by the Debtors in favor of the Prepetition Agent under any other documents or agreements are referred to collectively herein as the "Prepetition Liens."

13. As of the Petition Date, the Debtors were indebted to the Prepetition Agent and Prepetition Lenders under the Indebtedness Documents, without defense, counterclaim, offset, claim, or cause of action of any kind, in the aggregate amount of not less than $119,502,022.22, consisting of (a) unpaid principal in the amount of not less than $119,500,000.00, (b) accrued but

---

[3] Prairie Gas Gathering, LLC was dissolved in April 2017 and is not a debtor in these Cases.

unpaid interest (including prepetition default interest) in the amount of not less than $2,022.22, plus (c) all other fees, expenses, charges and other amounts due under the Credit Agreement and the other Indebtedness Documents (including, without limitation, attorneys' fees, consultant fees, and related expenses and disbursements that are chargeable or reimbursable under the Indebtedness Documents), and all other Obligations owing under the Indebtedness Documents as of the Petition Date (collectively, the "Prepetition Debt").

## The Debtors' Urgent Need to Use Cash Collateral

14. In the normal course of business, the Debtors use cash on hand and cash flow from operations to fund working capital, capital expenditures and for other general corporate purposes. An inability to use cash on hand and cash generated from operations during the Chapter 11 Case could potentially cripple the Debtors' business operations to the detriment of all parties in interest. The Debtors must use its cash to, among other things, continue the operation of its businesses in an orderly manner, maintain business relationships with lessors, vendors, suppliers and customers, pay employees and satisfy other working capital and operational needs. All of these actions are necessary to preserve and maintain the Debtors' going-concern value and, ultimately, implement a successful Chapter 11 process. If the Debtors are unable to continue using Cash Collateral during the Cases, and if its continued use of the Cash Collateral is not immediately approved, there will be immediate and irreparable harm to the Debtors' business and the estate, as well as to the value of the Secured Creditor's lien interests, and to other unsecured creditors.

## Basis for Relief Requested

**A.     The Use of Cash Collateral is Warranted and Should be Approved**

15. The Debtors' proposed adequate protection is consistent with the requirements of Section 363 of the Bankruptcy Code and, therefore, the Debtors' use of Cash Collateral meets

the standard for approval under Section 363(c)(2)(B) of the Bankruptcy Code. The Debtors' use of property of its estate is governed by Section 363 of the Bankruptcy Code, which provides in pertinent part, as follows:

> If the business of the Debtors are authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

16. Section 363(c)(2)(A) of the Bankruptcy Code permits a debtor-in-possession to use cash collateral with the consent of the secured party. Alternatively, Section 363(c)(2)(B) of the Bankruptcy Code permits the Court, after notice and a hearing, to authorize a debtor-in-possession's use of cash collateral without the consent of the secured party so long as the use is consistent with the provisions of Section 363 of the Bankruptcy Code. Section 363(e) of the Bankruptcy Code further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Section 363(e) of the Bankruptcy Code requires that the Debtors adequately protect the Secured Creditor's interest in property to be used by the Debtors from the diminution in value of such Secured Creditor's interest resulting from the Debtors' use of the property during the Cases.

17. The Debtors have concluded that the requested relief is the best alternative available under the circumstances of the Cases. Bankruptcy courts routinely defer to a Debtors' business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility, and asset-based facility

were approved because they "reflect[ed] sound and prudent business judgment, . . . [and were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); *In re Simasko Prods. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("[B]usiness judgments should be left to the board room and not to this Court."). Indeed, "more exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

18. The Debtors have exercised sound business judgment in determining that the requested relief is appropriate and have satisfied the legal prerequisites to use Cash Collateral and Prepetition Collateral on an interim basis on the terms and conditions set forth in the Interim Order. In the reasonable exercise of the Debtors' business judgment, the requested relief is the best option available under the Debtors' present circumstances. The purpose of the requested relief is to enable the Debtors to continue normal business operations during the Cases. Further, the requested relief, on an interim basis, does not, directly or indirectly, materially prejudice the Debtors' estate or other parties-in-interest. Based on all of the foregoing, the adequate protection is fair and reasonable and sufficient to satisfy the requirements of Section 363(e) of the Bankruptcy Code. Accordingly, the Debtors should be granted authority to obtain the use of Cash Collateral and Prepetition Collateral on the terms and conditions described above.

**B.    The Debtors' Proposed Grant of Adequate Protection to Use Cash Collateral is Appropriate**

19. Pursuant to section 363(c) of the Bankruptcy Code, the Debtors may only use Cash Collateral of the Secured Creditor, subject to the consent of those parties or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides

that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

20. Notably, the Bankruptcy Code does not specifically state what must be provided in an adequate protection package. Instead, Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens or the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361; *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The Code does not expressly define adequate protection, but section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest in such property.").

21. As a result, what constitutes adequate protection is decided on a case-by-case basis. *See In re Swedeland Dev. Group., Inc.*, 16 F.3d at 564 ("[A] determination of whether there is adequate protection is made on a case by case basis.") (citing *In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987)); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("the determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case"); *see also In re Realty Southwest Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted); *see also In re Cont'l Airlines Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993).

22. The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the bankruptcy process. *In re Monroe Park*, 17 B.R. 934 (D. Del. 1982) (concept of adequate protection requires a debtor to propose some form of relief that will preserve the secured creditor's interest in collateral pending the outcome of the bankruptcy proceedings); *In re Swedeland Dev. Group., Inc.*, 16 F.3d at 564 ("'The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.'") (quoting *In re O'Connor*, 808 F.2d at 1396); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the Debtors' bankruptcy."); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization."). "However, neither the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties." *In re WorldCom*, 304 B.R. at 619.

23. Here, the Prepetition Agent will hold and continue to hold, $952,284.50 in proceeds of the Loans in the Retention Account (as defined in the Interim Order). The Secured Creditor shall transfer the Loan proceeds to the DIP Accounts (as such term is defined in the Interim Order) on a twice-monthly basis in accordance with the provisions of Paragraph 6 of the Interim Order.

24. The Debtors propose to provide the Secured Creditor with the adequate protection to protect against the post-petition diminution in value of the Prepetition Collateral (including the Cash Collateral) resulting from the use, sale or lease of the Prepetition Collateral (including the Cash) Collateral by the Debtors through (i) the Debtors' compliance with the Budget (as defined in the Interim Order); (ii) certain restrictions on the Debtors' use of Cash Collateral; (iii) replacement liens; (iv) adequate protection superpriority claims; (v) the Debtors' payment of the Adequate Protection Payments; and (vi) the ability of the Prepetition Agent to request further adequate protection at any time during the Cases. Considered in the context of the Debtors' current and projected cash position, the proposed adequate protection is sufficient to protect the Secured Creditor from any diminution in value to the Prepetition Collateral. Under the circumstances of the Cases, the Debtors' provision of the adequate protection is not only necessary to protect against any diminution in value, but is also fair and appropriate to ensure the Debtors are able to continue using Prepetition Collateral (including the Cash Collateral) for the benefit of its estate and all parties in interest and to continue its business operations during the Cases.

25. The Secured Creditor will inherently benefit from the Debtors' proposed use of the Cash Collateral, which will prevent avoidable diminution of the value of the Cash Collateral and enhance the likelihood of preserving the Debtors' overall going concern value as the Debtors proceed with these Cases. Preservation of the Debtors' business as a going concern in and of itself serves to provide such parties "adequate protection" for Bankruptcy Code purposes. *See 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (noting that, in determining whether protection is "adequate," courts consider "whether the value of the debtor's property will increase as a result of the" use of collateral or provision of financing); *In re Sky*

*Valley, Inc.*, 100 B.R. 107, 114 (Bankr. N.D. Ga. 1988) ("an increase in the value of the collateral . . . resulting from superpriority financing could result in adequate protection." (citation omitted)), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989).

26. The Debtors believe that the proposed adequate protection in the Cash Collateral Orders is necessary and sufficient for the Debtors to continue to use Cash Collateral. Accordingly, the Debtors submit that the adequate protection is (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtors and their estates. Moreover, courts in this district and others have approved similar adequate protection packages in other recent chapter 11 cases.

**C.      The Automatic Stay Should be Modified to Effectuate the Interim Order**

27. The relief requested herein contemplates a modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code to (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition Agent may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Agent and Prepetition Lenders under the Interim Order; (d) authorize the Debtors to pay, and the Prepetition Agent to retain and apply, any payments made in accordance with the terms of the Interim Order; and (e) permit the Prepetition Agent, upon the occurrence of a Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare any obligations owed on account of a Diminution in Value owed to the Prepetition Agent and Prepetition Lenders to be immediately due and payable; (iii) setoff and apply immediately any and all amounts in accounts maintained by the Debtors with

the Prepetition Agent against any obligations owed on account of a Diminution in Value owed to the Prepetition Agent and Prepetition Lenders; and (iv) take any other actions or exercise any other rights or remedies permitted under the Interim Order.

28. The Debtors submit that such modifications are customary in consensual cash collateral orders and, in the Debtors' business judgment, reasonable and fair under the circumstances of the Cases. Accordingly, the Debtors believe that these provisions warrant approval by the Court.

**D. An Interim Hearing on the Approval of Cash Collateral Usage on an Interim Basis is Necessary to Prevent Immediate and Irreparable Harm**

29. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use Cash Collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a Debtors' estate. Courts apply the business judgment standard applicable to other business decisions when considering whether to conduct a preliminary hearing. *See, e.g., In re Simasko Prods. Co.*, 47 B.R. at 449. After this fourteen (14) day period, the request to use cash collateral or obtain financing is not limited to those amounts necessary to prevent disruption of the Debtors' business, and the Debtors are entitled to use or borrow those amounts that it believes prudent in the operation of its business.

30. The Debtors request that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtors to use Cash Collateral on an interim basis, pending the final hearing. As discussed herein, the Debtors require the immediate use of Cash Collateral to continue to operate on a postpetition basis and pay their administrative expenses.

## Request for Immediate Relief

31. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For the reasons discussed herein and in the First Day Declaration, granting the relief requested in this Motion is critical to enabling the Debtors to effectively transition to operating as chapter 11 debtors and to preserve their business operations. Failure to receive such authorization and other relief during the first twenty-one (21) days of the Cases would severely disrupt the Debtors' operations and significantly impact the Debtors' ability to participate in the Cases. For the reasons discussed herein and in the First Day Declaration, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rules 4001(a), 6004(a), and 6004(h)

32. To implement the foregoing successfully, the Debtors seek a waiver of the stay of effectiveness of this order under Bankruptcy Rule 4001(a)(3), the notice requirements under Bankruptcy Rule 6004(a), and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

33. Notice of this Motion has been provided to: (i) the Office of the U.S. Trustee for this District; (ii) those parties listed as holding the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis; (iii) the Prepetition Agent and its counsel; (iv) any other

secured parties of record or parties that, to the Debtors' knowledge, may assert a security interest in property of the Debtors' estates; (v) the Internal Revenue Service; (vi) the Office of the United States Attorney for the Western District of Texas; and (vii) any party that has requested notice in these Cases pursuant to Bankruptcy Rule 2002.

## **No Prior Request**

34. No prior motion for the relief requested herein has been made to this Court of any other court.

## **Conclusion**

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Interim Order attached hereto as **Exhibit 1**, and subsequently a final order granting the relief requested herein; (ii) set an interim hearing on this Motion; and (iii) grant such other and further relief as is just and proper.

Dated: August 7, 2018

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Deborah D. Williamson*

Deborah D. Williamson
State Bar No. 21617500
Patrick L. Huffstickler
State Bar No. 10199250
Jesse T. Moore
State Bar No. 24056001
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**