## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-70116 |
| | § | Case No. 18-70117 |
| **RED FORK (USA)** | § | |
| **INVESTMENTS, INC.,** *et al.*,[1] | § | Chapter 11 |
| | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 18-70116 |

---

## JOINT PLAN OF LIQUIDATION OF THE DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

DYKEMA GOSSETT PLLC
**112 East Pecan Street, Suite 1800**
**San Antonio, Texas 78205**
**Telephone: (210) 554-5500**
**Facsimile: (210) 226-8395**

ATTORNEYS FOR DEBTORS

---

[1] The Debtors in these chapter 11 cases are Red Fork (USA) Investments, Inc. and EastOK Pipeline, LLC.

4851-8782-0681.4
03/09/2019segment>

# TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ........................................................................................ 1

    1.1    Introduction. ......................................................................................... 1

    1.2    General Plan Structure. .................................................................... 1

ARTICLE 2 DEFINITIONS AND INTERPRETATION .......................................... 2

    2.1    Definitions. ........................................................................................... 2

    2.2    Interpretation, Rules of Construction, and Other Terms. .............. 14

    2.3    Controlling Document .................................................................... 15

ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS ....................... 15

    3.1    Administrative Expenses and Priority Tax Claims. ...................... 15

    3.2    Classes of Claims and Interests. .................................................... 15

    3.3    Identification of Classes. ................................................................ 16

    3.4    Voting and Acceptance by Impaired Classes of Claims. .............. 16

    3.5    Elimination of Classes for Voting Purposes. ................................ 17

    3.6    Controversy Concerning Classification, Impairment or Voting Rights. ....... 17

ARTICLE 4 TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS ............ 17

    4.1    Administrative Expense Claims. .................................................... 17

    4.2    Priority Tax Claims. ....................................................................... 18

    4.3    Payment of Statutory Fees. ............................................................ 19

    4.4    Disallowance of Special Taxes. ..................................................... 19

ARTICLE 5 TREATMENT OF CLASSES ............................................................ 19

    5.1    Treatment of Class 1– Allowed Priority Non-Tax Claims. .......... 19

    5.2    Treatment of Class 2 – Allowed Prepetition Credit Agreement Secured Claims. .............................................................................. 20

    5.3    Treatment of Class 3 – Allowed Other Secured Claims. .............. 20

    5.4    Treatment of Class 4 – Allowed General Unsecured Claims. ...... 20

    5.5    Treatment of Class 5 – Interests. ................................................... 21

ARTICLE 6 CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE ............. 21

    6.1    Conditions Precedent to Occurrence of the Effective Date. ......... 21

    6.2    Notice of Occurrence of Effective Date. ....................................... 21

ARTICLE 7 MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ........................................................................................................ 22

    7.1    Post-Effective Date Governance. ................................................... 22

i

| | | |
|---|---|---|
| 7.2 | Continuing Corporate Existence; Vesting of Assets. | 22 |
| 7.3 | Plan Administrator. | 23 |
| 7.4 | Reporting. | 24 |
| 7.5 | Exculpation of Plan Administrator. | 24 |
| 7.6 | Source of Funding. | 25 |
| 7.7 | Payment of Plan Expenses. | 25 |
| 7.8 | Plan Administrator Indemnification. | 25 |
| 7.9 | Resignation, Replacement, or Termination of Plan Administrator. | 25 |
| 7.10 | Effectiveness of Securities, Instruments, and Agreements. | 26 |
| 7.11 | Approval of Agreements. | 26 |
| 7.12 | Further Transactions. | 26 |
| 7.13 | Ultimate Dissolution of Debtors; Entry of Final Decree. | 26 |
| 7.14 | Retention of Rights to Pursue Causes of Action. | 26 |

**ARTICLE 8 DISPUTED CLAIMS, DISPUTED INTERESTS, AND MISCELLANEOUS DISTRIBUTION PROVISIONS** ........... 27

| | | |
|---|---|---|
| 8.1 | Objections. | 27 |
| 8.2 | Amendments to Claims; Claims Filed After the Confirmation Date. | 27 |
| 8.3 | Distributions. | 27 |
| 8.4 | Distributions on Account of Disputed Claims. | 28 |
| 8.5 | Undeliverable or Unclaimed Distributions. | 28 |
| 8.6 | Allocation of Consideration. | 28 |
| 8.7 | Transmittal of Distributions and Notices. | 28 |
| 8.8 | Method of Cash Distributions. | 29 |
| 8.9 | Distributions on Non-Business Days. | 29 |
| 8.10 | Withholding Taxes. | 29 |
| 8.11 | Setoffs. | 29 |

**ARTICLE 9 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........... 30

| | | |
|---|---|---|
| 9.1 | Assumption and Assignment of Executory Contracts. | 30 |
| 9.2 | Deemed Rejection. | 30 |
| 9.3 | Approval of Rejection. | 30 |
| 9.4 | Rejection of Executory Contracts Non-Waiver | 30 |
| 9.5 | Rejection Damage Claim Bar Date | 30 |
| 9.6 | Indemnification Obligations | 31 |

ii

**ARTICLE 10 RELEASES; PLAN INJUNCTION; EXCULPATION** ................................. 31

    **10.1**    **Releases.** ....................................................................................... 31

    **10.2**    **Injunction.** ..................................................................................... 33

    **10.3**    **Exculpation.** .................................................................................. 34

**ARTICLE 11 MISCELLANEOUS** ............................................................................ 34

    **11.1**    **Conflicts Between Plan and Confirmation Order.** ......................... 34

    **11.2**    **Term of Injunction or Stays.** ........................................................ 34

    **11.3**    **Retention of Jurisdiction.** ............................................................. 34

    **11.4**    **Defects, Omissions and Amendment of the Plan.** .......................... 36

    **11.5**    **Successors and Assigns.** ................................................................ 37

    **11.6**    **Cram Down.** .................................................................................. 37

    **11.7**    **Modification of the Plan.** .............................................................. 37

    **11.8**    **Withdrawal or Revocation of the Plan.** ........................................ 37

    **11.9**    **Notices.** ......................................................................................... 37

    **11.10**   **Governing Law.** ............................................................................ 38

    **11.11**   **Severability.** ................................................................................. 38

    **11.12**   **All Claims.** ................................................................................... 39

Red Fork (USA) Investments, Inc. and EastOK Pipeline, LLC (each, a **"Debtor"** and, together, the **"Debtors"**) hereby propose this *Joint Plan of Liquidation of the Debtors and Debtors in Possession Pursuant to Chapter 11 of the Bankruptcy Code* (the **"Plan"**). The Debtors are the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Capitalized terms used but not otherwise defined in this Plan shall have the meanings set forth in Article 2 hereof.

## ARTICLE 1

## INTRODUCTION

### 1.1 Introduction.

This Plan is proposed by and on behalf of the Debtors pursuant to Section 1121(a) of the Bankruptcy Code for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, results of operations, historical financial information and properties, and for a summary and analysis of the Plan.

All holders of Claims against the Debtors are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Debtors for use in soliciting acceptances or rejections of this Plan.

### 1.2 General Plan Structure.

Substantially all of the Debtors' assets were sold pursuant to Section 363 of the Bankruptcy Code. The Plan is a plan of liquidation that, among other things, provides for (a) funding by the DIP Lenders under the DIP Facility of the Plan Administration Funding in an amount sufficient to pay allowed administrative expense claims and allowed priority claims against the Debtors, Plan Expenses, and distributions to the holders of allowed general unsecured claims (other than Deficiency Claims) in an amount equal to approximately five percent (5%) of the allowed amount of such claims, and (b) the appointment of a Plan Administrator to liquidate the Estates' remaining assets, if and to the extent such assets were not previously monetized to cash or otherwise transferred by the Debtors prior to the Effective Date, and to distribute all net proceeds of the Estates' remaining assets to holders of Allowed Claims. The Debtors believe that the Plan accomplishes this objective and is in the best interests of the Estates.

Under the Plan, all allowed administrative expense claims and allowed priority claims against the Debtors will be paid in full on or as soon as practicable after the Effective Date out of the Plan Administration Funding, unless otherwise agreed by the holders of such claims. Holders of secured claims will either be paid in cash or will receive the benefit of their collateral.

Holders of allowed non-priority general unsecured claims will receive their respective pro rata share of the Plan Administration Funding (after the payment of allowed administrative expense claims, allowed priority claims, and payment or reserve for Plan Expenses) after the Effective Date. All Interests in the Debtors will be cancelled as of the Effective Date.

On and after the Effective Date, the Plan Administrator will act for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof, and shall, among other powers, wind up the affairs of the Liquidating Debtors; use, manage, sell, abandon and/or otherwise dispose of the remaining property of the Estates; prosecute objections to Claims and any litigation on behalf of the Liquidating Debtors; cause distributions to be made on account of Allowed Claims pursuant to the Plan; and take such other actions required under or consistent with the Plan. The initial Plan Administrator will be Eugene Davis, the current sole director of Red Fork.

Though the Plan is styled a "Joint Plan," the Plan as drafted consists of two (2) separate Plans – one for each Debtor. The Bankruptcy Cases are not substantively consolidated, and the liquidation of assets and treatment of Claims for each Debtor will be separately maintained and administered. Without limiting other provisions of the Plan, the Debtors specifically reserve the right to withdraw the Plan from consideration for confirmation as to both Debtors if the Plan is not confirmed as to both Debtors.

## ARTICLE 2

## DEFINITIONS AND INTERPRETATION

In addition to such other terms as may be defined in other provisions of the Plan, the following capitalized terms shall have the following meanings:

### 2.1 Definitions.

2.1.1 "**Administrative Expense Claim**" shall mean (a) any cost or expense of administration in connection with these Bankruptcy Cases of a kind specified in Sections 364(c)(1), 503(b), or 507(a)(1) of the Bankruptcy Code, including without limitation, the actual, necessary costs and expenses of preserving the Estates, including wages, salaries, or any other compensation for services rendered on or after the Petition Date, (b) Professional Claims, and (c) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

2.1.2 "**Administrative Expense Claim Bar Date**" shall mean the date which is thirty (30) days following the Effective Date.

2.1.3 "**Allowed Claim**" shall mean any Claim that is Allowed.

2.1.4 "**Allowed**" shall mean, with respect to Claims and Interests, (a) any Claim against or Interest in the Debtors, proof of which is timely Filed or by order of the Bankruptcy Court is not or will not be required to be Filed; (b) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent, nor unliquidated, and for which no timely controverting Filed proof of Claim has been Filed; (c) any Interest registered in the Debtors' books and records as of the Petition Date; or (d) any Claim allowed pursuant to the Plan and, in each such case in (a), (b), and (c) above, as to which either (i) no objection to the allowance thereof has been Filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules,

or the Bankruptcy Court, or (ii) such an objection is so Filed and the Claim or Interest shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

2.1.5 **"Amended Charter and By-laws"** shall mean the amended charters and by-laws of the Liquidating Debtors as modified by this Plan and the Confirmation Order.

2.1.6 **"Assets"** shall mean all property of the Debtors and their Estates of any nature whatsoever as of the Effective Date.

2.1.7 **"Ballot"** shall mean the ballot form on which holders of Impaired Claims entitled to vote on the Plan indicate their acceptance or rejection of the Plan.

2.1.8 **"Bankruptcy Cases"** means the bankruptcy cases commenced by the Debtors on August 7, 2018 by the filing of voluntary chapter 11 petitions in the United States Bankruptcy Court for the Western District of Texas, Midland Division, jointly administered under Case Number 18-70116 and styled as *In re Red Fork (USA) Investments, Inc., et al., Debtors.*

2.1.9 **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as subsequently amended, principally codified at 11 U.S.C. §§ 101, *et seq.* Unless otherwise stated herein or the Disclosure Statement, all references to "Section" or "§" are to the Bankruptcy Code.

2.1.10 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, or, in the event that such court ceases to exercise jurisdiction over the Bankruptcy Cases, such court that may have jurisdiction over the Debtors under chapter 11 of the Bankruptcy Code.

2.1.11 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as subsequently amended, and, where appropriate, the Local Bankruptcy Rules of the Bankruptcy Court.

2.1.12 **"Bar Date"** means the bar date(s) established by the Bankruptcy Court as the last day for filing proofs of Claim against the Debtors, which for all entities except governmental units was January 3, 2019, and for governmental entities was February 4, 2019.

2.1.13 **"Bidding Procedures and Sale Motion"** shall mean the *Debtors' Motion for Entry of Orders (I)(A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (C) Approving the Form and Manner of Notices in Connection with the Sale of Substantially all of the Debtors' Assets and the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, (D) Scheduling a Hearing on Approval of the Proposed Sale of the Debtors' Assets, and (E) Granting Related Relief; and (II) (A) Approving the Sale of Substantially all of the Debtors' Assets Free And Clear of all Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the*

*Debtors' Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, and (C) Granting Related Relief* [ECF No. 58].

**2.1.14 "Bidding Procedures Order"** shall mean the *Order (I)(A) Authorizing and Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases, (C) Approving the Form and Manner of Notices in Connection with the Sale of Substantially all of the Debtors' Assets and the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, (D) Scheduling a Hearing on Approval of the Proposed Sale of the Debtors' Assets, and (E) Granting Related Relief* [ECF No. 87].

**2.1.15 "Business Day"** shall mean any day except Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006(a)).

**2.1.16 "Buyer"** shall mean NJW Oklahoma Acquisitions Company LLC.

**2.1.17 "Cash Collateral"** shall have the meaning set forth in Section 363(a) of the Bankruptcy Code.

**2.1.18 "Cash"** shall mean cash and cash equivalents that evidence immediately available funds, including, without limitation, currency, certified checks, cashier's checks, or wire transfers of immediately available funds from any source or a check drawn on a domestic bank.

**2.1.19 "Cause of Action"** shall mean any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, Claim, or other liability (including a derivative claim) whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity, or otherwise, including (a) Chapter 5 Causes of Action; (b) damages (general, exemplary, or both) relating to or based on (i) contract, fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based upon alter ego or other liability theories; (c) damages based on any other claim of the Debtors, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) any claim of the Debtors for equitable subordination under Section 510(c) of the Bankruptcy Code or under other applicable laws; (e) any claim of the Debtors to recharacterize one or more Claims as Interests; and (f) any unresolved objection to any Disputed Claim.

**2.1.20 "Cautionary Statements"** shall have the meaning ascribed to it in section IX.A of the Disclosure Statement.

**2.1.21 "Chapter 11"** shall mean Chapter 11 of the Bankruptcy Code.

**2.1.22 "<u>Chapter 5 Cause of Action</u>"** shall mean any Cause of Action arising under Sections 510, 544 through 551, and 553 of the Bankruptcy Code or otherwise arising under the Bankruptcy Code.

**2.1.23 "<u>Claim Objection Deadline</u>"** shall mean the date which is thirty (30) days following the Effective Date but which may be further extended by order of the Bankruptcy Court.

**2.1.24 "<u>Claim</u>"** shall mean any claim against the Debtors within the meaning of Section 101(5) of the Bankruptcy Code.

**2.1.25 "<u>Class</u>"** shall mean any group of substantially similar Claims or Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**2.1.26 "<u>Collateral</u>"** shall mean any property of a Debtor or a Debtor's Estate, or any interest of a Debtor's or its Estate's, that is subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code.

**2.1.27 "<u>Confirmation</u>"** shall mean the entry of a Confirmation Order approving this Plan.

**2.1.28 "<u>Confirmation Date</u>"** shall mean the date the Confirmation Order is entered on the docket for the Bankruptcy Cases maintained by the Clerk of the Bankruptcy Court.

**2.1.29 "<u>Confirmation Hearing</u>"** shall mean the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such may be continued from time to time, pursuant to Section 1129 of the Bankruptcy Code.

**2.1.30 "<u>Confirmation Notice</u>"** shall mean notice of the Confirmation Hearing, substantially in the same form approved by the Bankruptcy Court pursuant to the Order Approving Disclosure Statement.

**2.1.31 "<u>Confirmation Order</u>"** shall mean the order, in form and substance acceptable to the DIP Agent and Prepetition Agent, signed by the Bankruptcy Court and caused to be entered that confirms this Plan pursuant to Section 1129 of the Bankruptcy Code, as may be thereafter amended or supplemented.

**2.1.32 "<u>Credit Agreement</u>"** shall mean that certain Amended and Restated Credit Agreement, by and between Red Fork, as borrower, Guggenheim, as the Prepetition Agent, and the Prepetition Lenders, dated February 10, 2015 (as amended, restated, supplemented or otherwise modified from time to time, together with all exhibits thereto).

**2.1.33 "<u>Creditor</u>"** has the meaning prescribed under Section 101(10) of the Bankruptcy Code.

**2.1.34 "<u>Consummation</u>"** means substantial consummation of the Plan as that term is used in Section 1127(b) of the Bankruptcy Code.

**2.1.35 "<u>Debtors</u>"** shall mean Red Fork (USA) Investments, Inc. and EastOK Pipeline, LLC, as debtors and debtors-in-possession. Reference to "Debtor" shall mean to such individual Debtor, as a debtor and debtor-in-possession, as the case may be.

**2.1.36 "<u>Deficiency Claim</u>"** shall mean the amount by which an Allowed Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with Section 506(a) of the Bankruptcy Code. A Deficiency Claim is a General Unsecured Claim but only if the holder of the Claim had recourse against the particular Debtor prior to any foreclosure of the Collateral securing such Claim.

**2.1.37 "<u>DIP Administrative Claim</u>"** shall mean the superpriority administrative expense claim granted to the DIP Agent, for and on behalf of the DIP Lenders, pursuant to the Final DIP Order.

**2.1.38 "<u>DIP Agent</u>"** shall mean Guggenheim, in its capacity as administrative agent under the DIP Credit Agreement.

**2.1.39 "<u>DIP Credit Agreement</u>"** shall mean that certain Second Amended and Restated Credit Agreement dated as of October 8, 2018 among Red Fork, as Borrower, Guggenheim, as Administrative Agent and Collateral Agent, and the DIP Lenders.

**2.1.40 "<u>DIP Facility</u>"** shall mean the post-petition secured superpriority loan(s) made by the DIP Lenders to the Debtors and approved by the Bankruptcy Court pursuant to the Final DIP Order.

**2.1.41 "<u>DIP Lenders</u>"** shall mean the post-petition lenders under the DIP Credit Agreement.

**2.1.42 "<u>Disallowed Claim</u>"** shall mean any Claim, including any portion thereof, that has been disallowed, denied, dismissed, expunged or overruled by a Final Order.

**2.1.43 "<u>Disclosure Statement</u>"** shall mean the *Disclosure Statement Under 11 U.S.C. § 1125 in Support of the Debtors' Joint Plan of Liquidation* accompanying this Plan (including all exhibits and schedules thereto or referenced therein) regarding the Plan, as may be amended, modified, or supplemented.

**2.1.44 "<u>Disputed Claim</u>"** shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been Filed, or deemed Filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be Filed, a Claim shall be considered a Disputed Claim (A) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or

4851-8782-0681.4
03/09/2019

classification of any corresponding Claim scheduled by the Debtors in the Schedules, to the extent of such excess, (B) in its entirety, if any corresponding Claim scheduled by the Debtors has been scheduled as disputed, contingent, or unliquidated in the Schedules, or (C) in its entirety, if no corresponding Claim has been scheduled by the Debtors in its Schedules.  It may also refer to a Disputed Claim in a specified Class.  For example, a Disputed General Unsecured Claim is a Disputed Claim in the General Unsecured Claims Class.

2.1.45  **"Distribution"** shall mean any property delivered or payment made under the Plan.

2.1.46  **"EastOK Schedules"** shall mean the Schedule of Assets and Liabilities filed at ECF Number 108.

2.1.47  **"EastOK"** shall mean EastOK Pipeline, LLC.

2.1.48  **"Effective Date"** shall mean the first Business Day on which all conditions to the occurrence of the Effective Date have been satisfied or duly waived, including, without limitation, Confirmation of the Plan and the Confirmation Order having become a Final Order.

2.1.49  **"Entity"** shall mean any individual, corporation, partnership, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit, or other entity, including the Debtors and the United States Trustee, whether singular or plural.

2.1.50  **"Estates"** shall mean the bankruptcy estates created in these Bankruptcy Cases pursuant to Section 541 of the Bankruptcy Code.

2.1.51  **"Exclusive Periods"** means the deadlines by which only the Debtors may file and solicit acceptance of a chapter 11 plan as provided for in Section 1121 of the Bankruptcy Code, including any extensions of those periods as ordered by the Bankruptcy Court.

2.1.52  **"Executory Contracts"** means executory contracts and unexpired leases as such terms are used in Section 365 of the Bankruptcy Code, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

2.1.53  **"Face Amount"** shall mean (a) with respect to a particular Claim, (i) if the Claim is listed in the Schedules and the holder of such Claim did not File a proof of Claim within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, or other applicable law, the amount of such Claim that is listed in the Schedules as not disputed, contingent, or unliquidated, or (ii) if the holder of such Claim has Filed a proof of Claim with the Bankruptcy Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, or other applicable law, the liquidated amount stated in such proof of Claim, or such amount as is determined by the Final Order of the Bankruptcy Court; (b) in the case of an Administrative Expense Claim, the liquidated

amount set forth in any application Filed with respect thereto, or the amount set forth in the Debtors' books and records or such amount as is determined pursuant to a Final Order; or (c) in all other cases, zero or such amount as shall be fixed or estimated pursuant to a Final Order.

2.1.54 **"File"** or **"Filed"** or **"Filing"** shall mean file or filed or filing with the Bankruptcy Court in these Cases.

2.1.55 **"Final DIP Order"** shall mean the *Final Order (I) Authorizing the Debtors to Obtain Secured Post-Petition Financing; (II) Granting Liens, Security Interests, Superpriority Claims, and Other Adequate Protect; (III) Adopting and Incorporating the Findings, Conclusions, Terms and Provisions of the Final Cash Collateral Order; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [ECF No. 141].

2.1.56 **"Final Order"** shall mean an order or judgment of a court that has not been reversed, amended, vacated, or stayed and as to which (a) the time to appeal or to seek certiorari or review has expired and as to which no appeal or petition for certiorari or review has been timely filed, or (b) any timely filed appeal or petition for certiorari or review has been finally determined or dismissed; *provided, however*, that the possibility or reality that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause such order not to be a Final Order.

2.1.57 **"Final Resolution Date"** shall mean the earlier of (a) liquidation of all Assets of the Liquidating Debtors pursuant to the Plan and the payment of all amounts due to be paid by the Debtors or Liquidating Debtors under the Plan, and (b) unless extended by prior written agreement of the Plan Administrator, the DIP Agent and the Prepetition Agent, May 31, 2019.

2.1.58 **"General Unsecured Claim"** shall mean any Claim that is not an Administrative Expense Claim, the DIP Administrative Claim, a Priority Claim, a Prepetition Credit Agreement Secured Claim, a Secured Tax Claim, or an Other Secured Claim. General Unsecured Claim includes Deficiency Claims.

2.1.59 **"Governmental Unit"** shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

2.1.60 **"Guggenheim"** shall mean Guggenheim Corporate Funding, LLC.

2.1.61 **"Holder"** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as reflected on the proof of Claim filed with respect to such Claim, or (ii) if no proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or the Debtors' books and records or as otherwise determined by the Bankruptcy Court; and (b) as to any Interest, the record owner or holder of such Interest as of the Petition Date as shown on the stock register maintained by the Debtors or as otherwise determined by the Bankruptcy Court.

**2.1.62 "Impaired"** shall have the meaning as set forth in Section 1124 of the Bankruptcy Code.

**2.1.63 "Incorporated Materials"** shall mean the Disclosure Statement and the materials incorporated by reference therein.

**2.1.64 "Indebtedness Documents"** shall mean, collectively, the Credit Agreement and any other agreements, notes, mortgages, security agreements, pledges, guarantees, assignments and other documents executed in connection with the Credit Agreement and all subsequent modifications, forbearance agreements and amendments thereto.

**2.1.65 "Indemnified Parties,"** or each an "Indemnified Party" shall mean the Plan Administrator and his agents, representatives, attorneys, professionals, and employees.

**2.1.66 "Interest"** shall mean any membership interest, shares or similar securities, whether or not transferrable or denominated "stock" and whether issued, unissued, authorized or outstanding, and any similar interest in a Debtor.

**2.1.67 "Lien"** shall mean any security interest, charge against, encumbrance on, or other interest in property, the purpose of which is to secure payment of a debt or performance of an obligation.

**2.1.68 "Liquidating Debtors"** shall be how the Debtors will be referred to after Confirmation of the Plan and occurrence of the Effective Date.

**2.1.69 "Liquidating Estates"** shall be how the Estates will be referred to after Confirmation of the Plan and occurrence of the Effective Date.

**2.1.70 "Liquidation Value"** shall mean the aggregate dollar amount that would be generated if the Bankruptcy Cases were converted to chapter 7 and a chapter 7 trustee liquidated the Debtors' assets.

**2.1.71 "Net Distributable Assets"** means the Cash proceeds from the liquidation of any Assets, net of any Plan Expenses, and excluding those Assets that are subject to any Liens.

**2.1.72 "NJW"** shall mean NJW Oklahoma Acquisitions Company LLC.

**2.1.73 "Order Approving Disclosure Statement"** shall mean the order, in form and substance acceptable to the DIP Agent and Prepetition Agent, entered by the Bankruptcy Court approving the Disclosure Statement.

**2.1.74 "Other Secured Claim"** shall mean a Secured Claim other than the Prepetition Credit Agreement Secured Claim.

**2.1.75 "Person"** shall mean and include natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

**2.1.76 "Petition Date"** shall mean August 7, 2018, the date the Bankruptcy Cases were commenced.

**2.1.77 "Plan"** shall mean this *Joint Plan of Liquidation of the Debtors and Debtors in Possession Pursuant to Chapter 11 of the Bankruptcy Code,* including any amendments or modifications hereto as may hereafter be Filed in accordance with the requirements of Section 1127 of the Bankruptcy Code, in each case in form and substance acceptable to the DIP Agent and the Prepetition Agent.

**2.1.78 "Plan Administration Funding Date"** shall mean the first Business Day after the Effective Date.

**2.1.79 "Plan Administration Funding"** shall mean an amount equal to $150,000, consisting of (i) Cash in the Estates on the Plan Administration Funding Date, and (ii) funding from the DIP Lenders in an amount equal to $150,000 less the total amount of Cash in the Estates on the Plan Administration Funding Date.

**2.1.80 "Plan Administrator"** shall mean, effective as of the Effective Date, Eugene Davis, as the fiduciary responsible for, among other things, those things set forth in Section 7.3 of the Plan, or any duly selected successor.

**2.1.81 "Plan Documents"** shall mean the agreements, documents, and instruments required to implement the terms of the Plan, contemplated in the Plan, or entered into in furtherance of the Plan, in each case in form and substance acceptable to the DIP Agent and Prepetition Agent, copies of which shall be available upon request to Debtors' counsel.

**2.1.82 "Plan Expenses"** shall mean, subject to review and approval of the DIP Agent and the Prepetition Agent as provided herein, the expenses incurred or payable by the Liquidating Debtors following the Effective Date (including the fees and costs of the Plan Administrator as set forth herein) relating to implementation of the Plan, for the purpose of (i) resolving Claims and effectuating Distributions to Creditors under the Plan, (ii) otherwise implementing the Plan and closing the Bankruptcy Cases, and (iii) undertaking any other matter relating to the Plan.

**2.1.83 "PLS"** shall mean PLS Energy Advisors, Inc.

**2.1.84 "Post-Petition Tax Claim Bar Date"** shall mean either (a) any date previously established by the Bankruptcy Court for filing such claims; or if no such date has previously been established (b) the later of (i) thirty (30) days following the Effective Date, and (ii) thirty (30) days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period.

**2.1.85 "Post-Petition Tax Claim"** shall mean requests for payment of Administrative Expense Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or was assessed within the period from and including the Petition Date through and including the Effective Date.

**2.1.86 "Prepetition Agent"** shall mean Guggenheim, as administrative agent and collateral agent for the Prepetition Lenders under the Credit Agreement.

**2.1.87 "Prepetition Credit Agreement Secured Claims"** shall mean the Secured Claims of the Prepetition Lenders under the Indebtedness Documents.

**2.1.88 "Prepetition Lenders"** shall mean the lenders from time to time party to the Credit Agreement.

**2.1.89 "Prepetition Liens"** shall mean, collectively, the liens and security interests granted by the Debtors in favor of the Prepetition Agent, for and on behalf of the Prepetition Lenders, under the Indebtedness Documents.

**2.1.90 "Prepetition Obligations"** shall have the meaning assigned in Article IV.A of the Disclosure Statement.

**2.1.91 "Priority Claim"** shall mean a Claim that is either a Priority Tax Claim or a Priority Non-Tax Claim.

**2.1.92 "Priority Non-Tax Claim"** shall mean a Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

**2.1.93 "Priority Tax Claim"** shall mean a Claim entitled to priority in payment pursuant to Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**2.1.94 "Professional"** shall mean each Entity either (a) employed by an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) seeking compensation and reimbursement pursuant to Section 503(b)(2) or (4) of the Bankruptcy Code.

**2.1.95 "Professional Claim"** shall mean an Administrative Expense Claim of a Professional for (a) compensation or reimbursement of actual and necessary costs and expenses relating to services provided after the Petition Date and prior to and including the Effective Date, or (b) for compensation and reimbursement that is allowed by the Bankruptcy Court pursuant to Section 503(b)(2) or (4) of the Bankruptcy Code.

**2.1.96 "Property"** shall mean all property of every kind or nature, owned by the Debtors or their Estates on the Petition Date.

4851-8782-0681.4
03/09/2019

**2.1.97 "Pro Rata"** shall mean the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class.

**2.1.98 "PSA"** shall mean that Purchase and Sale Agreement by and between Red Fork and EastOK, as sellers, and NJW, as Buyer, dated December 4, 2018, which provides for the sale of substantially all of the Debtors' Property to the Buyer pursuant to the Sale Order.

**2.1.99 "Red Fork Schedules"** shall mean the Schedule of Assets and Liabilities filed at ECF Number 106.

**2.1.100 "Red Fork"** shall mean Red Fork (USA) Investments, Inc.

**2.1.101 "Rejection Claim"** shall mean any Claim arising from the rejection of any executory contract or unexpired lease pursuant to this Plan, including, but not limited to, any Claim of (a) a lessor for damages resulting from the rejection of a lease of real property as any such Claim shall be calculated in accordance with Section 502(b)(6) of the Bankruptcy Code; or (b) an employee for damages resulting from the rejection of an employment agreement as any such Claim shall be calculated in accordance with Section 502(b)(7) of the Bankruptcy Code. A Rejection Claim shall constitute a General Unsecured Claim.

**2.1.102 "Rejection Damage Claim Bar Date"** shall mean, unless otherwise established by Final Order of the Bankruptcy Court, the date established pursuant to Section 365 of the Bankruptcy Code but in no event later than thirty (30) days after the Effective Date.

**2.1.103 "Released Parties,"** or each a "Released Party" shall mean, (a) the Prepetition Agent; (b) the Prepetition Lenders; (c) the DIP Agent; (d) the DIP Lenders; (e) Red Fork Energy Investors LLC; (f) Maverick Enterprises, Inc.; (g) Trey; (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity's affiliates, predecessors, successors, assigns, subsidiaries, managed accounts and funds, directors, officers, principals, partners, members, managers, controlling persons, employees, representatives, agents, attorneys, financial advisors, consultants and other professionals, in each case solely in their capacity as such; and (i) Eugene I. Davis.

**2.1.104 "Releasing Parties,"** or each a **"Releasing Party"** shall mean (a) the Holders of all Claims or Interests who vote to accept the Plan; (b) the Holders of Claims or Interests that are Unimpaired under the Plan; (c) the Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; and (d) the Holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein.

**2.1.105 "Rights of Action"** means any and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising before, on, or

after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtors or their Estates, including but not limited to (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law, (b) claims pursuant to Section 362 of the Bankruptcy Code, and (c) such claims and defenses as fraud, mistake, duress, and usury, except any claims released pursuant to ARTICLE 10 of the Plan.

2.1.106 **"Sale Assets"** means "Assets" as such term is defined in the PSA.

2.1.107 **"Sale"** means the sale of substantially all of the Debtors' Property to the Buyer approved by the Bankruptcy Court in the Sale Order.

2.1.108 **"Sale Order"** means the *Order (A) Approving Purchase Agreement, (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* entered in the Bankruptcy Cases [ECF No. 202].

2.1.109 **"Schedules"** shall mean the Red Fork Schedules and the EastOK Schedules.

2.1.110 **"Secured Claim"** shall mean a Claim that arose before the Petition Date, to the extent secured by a Lien or other security interest on property of the Debtors, which Lien is valid, perfected, and enforceable under applicable law and which is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Bankruptcy Cases, to the extent of the value of such property (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined pursuant to a Final Order in accordance with Section 506(a) or, as applicable, Section 553 of the Bankruptcy Code to the extent of such setoff.

2.1.111 **"Secured Tax Claim"** shall mean a Secured Claim of a Governmental Unit for property taxes assessed or for property taxes if and to the extent that the Lien securing such Claim attached under applicable law before the commencement of the Bankruptcy Cases.

2.1.112 **"Solicitation Package"** shall mean the package sent to Holders of Claims in Classes 2 and 4 including (a) a ballot (and return envelope) to be used in voting to accept or to reject the Plan; (b) the Disclosure Statement and Plan; (c) the Order Approving Disclosure Statement, (d) the notice of, among other things, (i) the date, time and place of the hearing to consider confirmation of the Plan and related matters and (ii) the deadline for filing objections to confirmation of the Plan; and (d) other materials as authorized by the Bankruptcy Court.

2.1.113 **"Statement(s) of Financial Affairs"** shall mean the statements of financial affairs filed by the Debtors in the Bankruptcy Cases, as may be amended, modified, or supplemented.

2.1.114 **"Tabulation Rules"** shall mean the tabulation procedures described in Article X.C of the Disclosure Statement.

**2.1.115** **"Trey"** shall mean Trey Resources, Inc.

**2.1.116** **"Trey Settlement"** shall mean the settlement between the Debtors and Trey, referenced in *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Reject a Certain Executory Contract with Trey Resources, Inc., and (II) Approving Settlement Between the Debtors and Trey Resources, Inc. with Respect to Contract Rejection Damages Claim* [ECF No. __], which, among other things, provides Trey an Allowed General Unsecured Claim in the amount of $250,000 arising from the Debtors' rejection of that Services and Operating Agreement among the Debtors and Trey.

**2.1.117** **"Unclaimed Property"** shall mean any Distribution made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors, the Liquidating Debtors, or the Plan Administrator as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Bankruptcy Cases. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to an address of a holder of an Allowed Claim and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no address to mail or deliver such property was available.

**2.1.118** **"Unimpaired"** shall mean a Claim that is not Impaired.

**2.1.119** **"Voting Deadline"** shall mean _:_ p.m. prevailing Central time, the deadline by which Ballots must be received by the Debtors, for such Ballots to be counted as voting in favor of or against the Plan. The Voting Deadline is established by the Bankruptcy Court in the Order Approving Disclosure Statement.

**2.1.120** **"Voting Procedures"** shall mean the procedures for submitting a Ballot to vote for or against the Plan as described in the Disclosure Statement.

**2.1.121** **"Voting Record Date"** shall mean [_____, 2019] as established in the Order Approving Disclosure Statement.

**2.2** **Interpretation, Rules of Construction, and Other Terms.**

**2.2.1** Any term used in this Plan that is not defined herein, whether in this article or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**2.2.2** The words "herein," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article, section, or clause contained in this Plan.

**2.2.3** Unless specified otherwise in a particular reference, a reference in this Plan to an article or section is a reference to that article or section of this Plan.

**2.2.4** Unless otherwise provided for herein, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

**2.2.5** As contextually appropriate, each term stated in either the singular or plural shall include both the singular and the plural.

**2.2.6** In addition to the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Plan.

**2.2.7** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.2.8** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**2.2.9** All exhibits to this Plan and the Plan Supplement are incorporated into this Plan and shall be deemed to be included in this Plan, and to the extent not annexed hereto, such exhibits and Plan Supplement shall be timely Filed in accordance with this Plan.

**2.3  Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is any inconsistency between a Plan provision and a provision of the Confirmation Order, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

# ARTICLE 3

# CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1  Administrative Expenses and Priority Tax Claims.**

As provided in Section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, together with the DIP Administrative Claim, shall not be classified for purposes of voting or receiving Distributions under the Plan. Rather, all such claims shall be treated separately as unclassified claims on the terms set forth in <u>ARTICLE 4</u> of the Plan.

**3.2  Classes of Claims and Interests.**

A Claim or Interest is classified in a particular class only to the extent that such Claim or Interest qualifies within the description of that class and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is in a particular Class only to the extent the Claim or

Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest.

**3.3    Identification of Classes.**

For purposes of organization, voting, distributions pursuant to the Plan, and all Confirmation matters, except as otherwise provided herein, all Claims (except for the DIP Administrative Claim, Administrative Expense Claims and Priority Tax Claims) and Interests shall be classified as follows:

**3.3.1**    <u>Class 1 – Priority Non-Tax Claims</u>: Class 1 consists of all Allowed Priority Non-Tax Claims. Class 1 is Unimpaired under the Plan. Class 1 is therefore conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

**3.3.2**    <u>Class 2 – Allowed Prepetition Credit Agreement Secured Claims</u>: Class 2 consists of the Allowed Prepetition Credit Agreement Secured Claims of the Prepetition Lenders. Class 2 is Impaired under the Plan, and Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan; *provided, however*, that the votes of the Holders of Claims in Class 2 shall not be counted for purposes of Confirmation.

**3.3.3**    <u>Class 3 – Allowed Other Secured Claims</u>: Class 3 consists of all Allowed Secured Claims other than those in Class 2. Each Other Secured Claim in Class 3 shall be assigned to a separate subclass, which shall be treated as a class in the Bankruptcy Case in which such Other Secured Claim is Allowed. Each subclass in Class 3 is Unimpaired. Class 3 is therefore conclusively presumed to have accepted the Plan and the Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

**3.3.4**    <u>Class 4 – Allowed General Unsecured Claims</u>: Class 4 consists of Unsecured Claims that are not: (i) Administrative Expense Claims, (ii) Priority Tax Claims, (iii) Secured Claims; or (iv) Priority Non-Tax Claims. Class 4 is Impaired under the Plan, and Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

**3.3.5**    <u>Class 5 – Interests</u>: Class 5 consists of the Holders of Interests in the Debtors. The Holders of Interests in the Debtors will receive no Distribution on account of their Interests and such Interests shall be deemed cancelled as of the Effective Date. Class 5 is Impaired under the Plan. Holders of Interests in Class 5 will not retain their Interests under the Plan, and no Distributions on account of such Interests will be made. Accordingly, Holders of Interests in Class 5 are conclusively presumed to have rejected the Plan, and therefore will not be entitled to vote to accept or reject the Plan.

**3.4    Voting and Acceptance by Impaired Classes of Claims.**

Holders of Claims in Classes 2 and 4 shall be entitled to vote separately to accept or reject the Plan; provided, however, that the votes of the holders of Claims in Class 2 shall not be counted for purposes of Confirmation. An Impaired, voting Class of Claims has accepted the

Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

**3.5** **Elimination of Classes for Voting Purposes.**

Any Class that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Interest, or a Claim or Interest temporarily allowed under Bankruptcy Rule 3018 or as to which no vote is cast shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under Bankruptcy Code § 1129(a)(8).

**3.6** **Controversy Concerning Classification, Impairment or Voting Rights.**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Bankruptcy Cases.

**ARTICLE 4**

**TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS**

Except as otherwise provided for in the Plan, all requests for payment of Administrative Expense Claims arising on or before the Confirmation Date not previously filed must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. All requests for payment of Professional Claims must be filed with the Bankruptcy Court within thirty (30) days after the Effective Date. Any Administrative Expense Claims or Professional Claims for which a request for payment is not filed by the deadline specified by the Plan shall be discharged and forever barred.

**4.1** **Administrative Expense Claims.**

**4.1.1** The DIP Administrative Claim is deemed Allowed as an Administrative Expense Claim in an amount equal to the principal balance owing, together with all accrued interest thereon and all costs, fees, expenses and other amounts under the DIP Credit Agreement. On account of the DIP Administrative Claim, the DIP Agent shall receive, (a) to the extent not already transferred to the DIP Agent for an on behalf of the DIP Lenders, the net proceeds of the Sale, and (b) for and on behalf of the DIP Lenders, Distributions by the Liquidating Debtors of any Cash in which the DIP Lenders hold a Lien and any Net Distributable Assets, excluding the proceeds of the Plan Administration Funding, until the DIP Administrative Claim has been paid in full.

**4.1.2** On or before the Effective Date, the Debtors shall pay all amounts owing to Professionals for all outstanding Professional Claims that have been awarded by the Bankruptcy Court but which were unpaid as of the Effective Date. On or prior to the

Administrative Expense Claim Bar Date, each Professional required to do so shall File with the Bankruptcy Court a final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Objections to Professional final fee applications must be Filed and served on the Plan Administrator and the Professionals to whose application the objections are addressed no later than ten (10) days after filing of the relevant final fee application. The Liquidating Debtors shall pay any outstanding amounts owed to a Professional within three (3) days after entry of a Final Order with respect to such Professional's final fee application. Any amounts previously paid to a Professional, but not supported by the Final Order with respect to such Professional's final fee application, shall be paid directly to the DIP Agent, on account of the DIP Administrative Claim, within three (3) days after entry of such Final Order.

4.1.3   Under the Plan, on or as soon as practicable after the of the Effective Date (to the extent payable on the Effective Date), each Holder of an Allowed Administrative Expense Claim, other than the DIP Administrative Claim and Professional Claims, shall receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense Claim, Cash from the Liquidating Debtors equal to the full amount of such Allowed Administrative Expense Claim, or such other treatment as the Liquidating Debtors and such Holder shall have agreed to in writing. Notwithstanding the foregoing, if an Allowed Administrative Expense Claim represents an obligation incurred in the ordinary course of business, such Allowed Administrative Expense Claim will be paid by the Liquidating Debtors when due.

4.1.4   Holders of Administrative Expense Claims (including, without limitation, holders of Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable Administrative Expense Claim Bar Date are forever barred from asserting such Claims against the Debtors, the Liquidating Debtors, or any of their respective property.

4.1.5   Allowed Administrative Expense Claims, but excluding the DIP Administrative Claim, shall be paid from the proceeds of the Plan Administration Funding.

4.1.6   Notwithstanding any other provision of the Plan, all fees, expenses, and other compensation arising after the Effective Date and due and payable to Professionals retained by the Plan Administrator shall be paid by the Plan Administrator (a) first, from the Plan Administration Funding, and (b) thereafter, from the remaining Assets of the Liquidating Debtors subject to the provisions of <u>Section 7.6</u> of the Plan.

4.2   **Priority Tax Claims.**

4.2.1   As required by Section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Priority Tax Claim, Cash from the Liquidating Debtors equal to the portion of the Allowed Priority Tax Claim due and payable on or prior to the Effective Date according

to applicable non-bankruptcy law; *provided, however,* the Liquidating Debtors may, in their discretion, elect to make, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, regular quarterly installment payments in Case of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim over a period ending not later than five (5) years after the Petition Date, together with interest for the period after the Effective Date at the rate determined under non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject at the sole option of the Liquidating Debtors to prepay the entire amount of the Allowed Priority Tax Claim. Any Allowed Priority Tax Claim (or portion thereof) against the Debtors not yet due and payable as of the Effective Date will be paid by the Liquidating Debtors no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the Bankruptcy Cases. Any Holder of a Priority Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed to in writing.

       **4.2.2**   To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law; *provided, however*, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in § 507(a)(8)(G)of the Bankruptcy Code) shall be disallowed pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtors, the Liquidating Debtors or their Estates, or their respective property.

## 4.3    Payment of Statutory Fees.

       All fees payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing; and (b) to the United States Trustee, shall be paid by the Debtors on or before the Effective Date. All such fees payable after the Effective Date shall be paid by the Liquidating Debtors.

## 4.4    Disallowance of Special Taxes.

       The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Section 1146 of the Bankruptcy Code.

**ARTICLE 5**

**TREATMENT OF CLASSES**

## 5.1    Treatment of Class 1– Allowed Priority Non-Tax Claims.

       **5.1.1**   Unless otherwise provided for pursuant to an order of the Bankruptcy Court, at the election of the Liquidating Debtors, the Holder of each Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Priority Non-Tax Claim, on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, (i) a Cash payment from the Liquidating

Debtors equal to the Allowed amount of such Claim, or (ii) such other treatment as may be agreed to by the Liquidating Debtors and the Holder of such Claim.

**5.2     Treatment of Class 2 – Allowed Prepetition Credit Agreement Secured Claims.**

      **5.2.1**     On the Effective Date or as soon as reasonably practicable thereafter, in full settlement, release and discharge of the Allowed Prepetition Credit Agreement Secured Claims, the Prepetition Agent shall receive, for and on behalf of the Prepetition Lenders, the proceeds of the liquidation of any Collateral securing the Prepetition Obligations (excluding the Plan Administration Funding) after the payment in full of Allowed Administrative Expense Claims, the DIP Administrative Claim, and Allowed Priority Tax Claims.  Any amount of the Prepetition Obligations that remains unpaid after the liquidation of such Collateral shall be treated as a Deficiency Claim to be paid under Class 4.

**5.3     Treatment of Class 3 – Allowed Other Secured Claims.**

      **5.3.1**     <u>Subclasses</u>: If there is more than one Allowed Other Secured Claim, then each Allowed Other Secured Claim shall be classified in a separate subclass (to be designated Class 3A, 3B, 3C, etc.).

      **5.3.2**     <u>Treatment of each subclass</u>: Unless otherwise provided for pursuant to an order of the Bankruptcy Court, except to the extent a Holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date, on the Effective Date, at the option of the Liquidating Debtors, (a) the Liquidating Debtors shall surrender all Collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Other Secured Claim; (b) such Holder shall receive the proceeds from the liquidation of such Holder's Collateral; or (c) such Holder shall receive such other treatment as may be agreed to by the Liquidating Debtors and the Holder of such Allowed Other Secured Claim in writing.

      **5.3.3**     <u>Deficiency Claim:</u> If the holder of an Allowed Other Secured Claim has a Deficiency Claim, such Claim shall be treated under the Plan as a General Unsecured Claim.

**5.4     Treatment of Class 4 – Allowed General Unsecured Claims.**

      **5.4.1**     <u>Treatment of Class 4</u>: Unless otherwise provided for pursuant to an order of the Bankruptcy Court or in the paragraph below, except to the extent that the Holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each holder of an Allowed General Unsecured Claim in Class 4 shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, their Pro Rata share of (a) the Plan Administration Funding, after payment of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and payment or reserve for Plan Expenses, and (b) Net Distributable Assets, after payment in full of the DIP Administrative Claim, until all Allowed General Unsecured Claims in Class 4 are paid in full or all of the Assets of the Liquidating Estates have been distributed.  Distributions to holders of Allowed Class 4 Claims shall be made

at such time or times that the Plan Administrator, in his discretion, determines that a Distribution to holders of Allowed Class 4 Claims is appropriate, taking into consideration the number and amount of Class 4 Claims that remain in dispute.

     **5.4.2** <u>Deficiency Claim</u>: While Class 4 shall include the Deficiency Claim of the Prepetition Lenders not otherwise satisfied in Class 2, no Distributions shall be made to the Prepetition Agent on account of such Class 4 Deficiency Claim until such time as all Allowed General Unsecured Claims that are not part of the Deficiency Claim of the Prepetition Lenders in Class 4 have received payment in an amount equal to five percent (5%) of the Allowed amount of such Claims. Upon payment of an amount equal to five percent (5%) of such non-Deficiency Claim Allowed General Unsecured Claims, the Deficiency Claim of the Prepetition Lenders shall receive a Pro Rata share of any further Distributions to Class 4, if any.

**5.5**    **Treatment of Class 5 – Interests.**

     The holders of Interests in Class 5 will receive no Distribution on account of their Interests and such Interests shall be deemed cancelled as of the Effective Date.

## ARTICLE 6

## CONDITIONS TO OCCURRENCE OF THE EFFECTIVE DATE

**6.1**    **Conditions Precedent to Occurrence of the Effective Date.**

     In addition to any other conditions set forth in this Plan, the following are conditions precedent to the occurrence of the Effective Date:

     **6.1.1** The Confirmation Order shall have been entered and become a Final Order in form and substance acceptable to the Debtors, the DIP Agent, and the Prepetition Agent.

     **6.1.2** The Plan Documents necessary or appropriate to implement the Plan, in form and substance acceptable to the DIP Agent and the Prepetition Agent, shall have been executed and delivered.

     **6.1.3** The Debtors may, upon the prior written consent of the DIP Agent and the Prepetition Agent, waive one or more of the conditions to the occurrence of the Effective Date.

**6.2**    **Notice of Occurrence of Effective Date.**

     No later than one (1) Business Day after the day selected by the Debtors to be the Effective Date, the Debtors shall File a notice with the Bankruptcy Court announcing the occurrence of the Effective Date.

## ARTICLE 7

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1    Post-Effective Date Governance.**

On the Effective Date, automatically and without further action, (a) any and all remaining officers or directors or managing partners of the Debtors shall be deemed to have resigned or withdrawn; and (b) the Plan Administrator shall have all right and authority necessary, as an officer or a representative of the Debtors and pursuant to the authority given to him in this Plan, to wind up the Debtors.

**7.2    Continuing Corporate Existence; Vesting of Assets.**

**7.2.1**    Except as otherwise specifically provided in the Plan, upon the Effective Date, all property of the Debtors shall remain with the Liquidating Debtors to be administered and liquidated by the Plan Administrator pursuant to the terms of the Plan. Upon the occurrence of the Effective Date, except as otherwise specifically provided in the Plan, pursuant to Section 1141(b), all Assets of the Debtors' Estates shall vest in the Liquidating Debtors free and clear of all Claims, Liens, encumbrances, and other Interests, subject only to the Liens under the Indebtedness Documents, which shall be released at the time the property or assets subject to such Liens are liquidated or the Allowed Prepetition Credit Agreement Secured Claims are satisfied.

**7.2.2**    Upon the Effective Date, the Debtors shall be thereafter referred to as the Liquidating Debtors and the Debtors' Estates shall be referred to as the Liquidating Estates. From the Effective Date, the Liquidating Debtors shall continue in existence, to the extent necessary, for the purpose of facilitating the efforts of the Plan Administrator, including, but not limited to, the following: (a) wind up the remaining affairs of the Liquidating Debtors; (b) liquidate, by conversion to Cash or other methods, any remaining Assets of the Liquidating Estates as expeditiously as reasonably possible; (c) enforce and prosecute claims, interests, rights, and privileges of the Liquidating Debtors; (d) resolve Disputed Claims; (e) administer the Plan, including distributing all Cash to holders of Allowed Claims in accordance with the Plan; and (f) file appropriate tax returns, if any.

**7.2.3**    On the Effective Date, the charters and by-laws of the Debtors shall be deemed amended and restated as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall be deemed amended to, among other things: (i) authorize one (1) share of common stock, $0.01 par value per share of the Debtors, ownership of which shall be restricted to the Plan Administrator, (ii) provide, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a prohibition against the issuance of nonvoting equity securities, and (iii) limit the activities of the Liquidating Debtors to matters related to the implementation of this Plan. Any amendment or modification to the Amended Charter and By-laws following the Confirmation Date, to the extent such modification or amendment changes the fundamental purpose of the corporation, (x) must be pursuant to

authority granted by order of the Bankruptcy Court and (y) no shareholder vote shall be required.

**7.2.4**    Unless otherwise set forth in this Plan, upon the Final Resolution Date, the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith; *provided*, *however*, that the Plan Administrator shall file with the appropriate state authority a certificate of cancellation.  From and after the Effective Date, the Liquidating Debtors shall not be required to file any document, or take any other action, to withdraw their business operation from any state in which the Liquidating Debtors were previously conducting their business operations.

**7.3    Plan Administrator.**

**7.3.1**    The initial Plan Administrator shall be Eugene I. Davis.   The Plan Administrator shall be deemed appointed upon entry of the Confirmation Order without further motion, application, notice, hearing, or other order of the Bankruptcy Court.

**7.3.2**    On and after the Effective Date, the Plan will be administered by the Plan Administrator on behalf of the Liquidating Debtors and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.

**7.3.3**    On and after the Effective Date, the Plan Administrator shall begin acting for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof.  The Plan Administrator shall serve in such capacity until the earlier of the date the Debtors are dissolved and the date such Plan Administrator resigns, is terminated by the DIP Agent  and/or the Prepetition Agent, or is otherwise unable to serve.

**7.3.4**    The Plan Administrator shall have and perform the duties, responsibilities, rights and obligations set forth in this Plan and in the Confirmation Order. Unless otherwise ordered by the Bankruptcy Court or agreed by the DIP Agent and the Prepetition Agent, the duties, responsibilities, rights and obligations of the Plan Administrator shall be limited to the following: (a) to maintain accounts and take actions required under or consistent with this Plan to consummate the Plan and make the Distributions as provided hereunder on behalf of the Liquidating Debtors; (b) to wind up the affairs of the Liquidating Debtors as expeditiously as reasonably possible; (c) to convert all remaining Assets of the Estates to Cash for the purpose of liquidating such Assets and making Distributions as provided hereunder; (d) to take all steps necessary to terminate the corporate existence of the Debtors; (e) to prepare and file tax returns to the extent required by law; (f) to employ and, subject to the terms of Articles 7.3.7 and 7.7 hereof, compensate, such professionals and agents as the Plan Administrator deems reasonably necessary to perform his or her duties under the Plan; (g) to represent the Liquidating Debtors before the Bankruptcy Court and other courts of competent jurisdiction, if necessary; and (h) to file quarterly post-confirmation reports and pay

quarterly fees to the Office of the United States Trustee until such time as a final decree is entered or the Bankruptcy Cases are dismissed, converted, or closed.

      **7.3.5**   The Plan Administrator shall use his reasonable best efforts to promptly liquidate the Assets of the Liquidating Estates as soon as practicable at minimal cost and to distribute the proceeds thereof as soon as practicable pursuant to this Plan.

      **7.3.6**   The Plan Administrator may not compromise and settle Claims and Causes of Action that exceed $100,000 without an order of the Bankruptcy Court after opportunity for notice and a hearing, and without the prior consent of the DIP Agent and the Prepetition Agent.

      **7.3.7**   The Plan Administrator shall be entitled to receive compensation in the form of a monthly fee of $5,000 plus reimbursement for actual, reasonable and necessary expenses incurred by the Plan Administrator, which amounts shall be paid by the Liquidating Debtors from the Plan Administration Funding. Consistent with the Trey Settlement, (a) the Plan Administrator shall employ Trey to provide services to the Plan Administrator in accordance with the Trey Settlement, (b) Trey shall be entitled to payment of a monthly fee of $7,500 by the Liquidating Debtors as compensation for such services, and (c) Trey shall provide such services to the Plan Administrator until the Plan is fully consummated a final decree is entered or the Bankruptcy Cases are dismissed, converted, or closed. Notwithstanding anything to the contrary contained herein, all fees and expenses of the Plan Administrator and any Professionals or other Persons employed by the Plan Administrator shall be subject to review and approval by the DIP Agent and the Prepetition Agent.  The Bankruptcy Court shall retain jurisdiction over objections to the Plan Administrator's fees and expenses; *provided, however,* that the Plan Administrator and any professionals he hires shall not be required to file any applications for compensation with the Bankruptcy Court.

      **7.3.8**   The Plan Administrator shall not be required to provide any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court.  If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Debtors.

## 7.4    **Reporting.**

The Plan Administrator shall provide monthly reports to the DIP Agent and the Prepetition Agent until such time as the DIP Administrative Claim and the Prepetition Credit Agreement Secured Claims are paid in full, which shall include a summary of all actions taken in the prior month.

## 7.5    **Exculpation of Plan Administrator.**

From and after the Effective Date, the Plan Administrator and his representatives shall not have or incur any liability to any Entity, including any holder of a Claim or Interest, for any act taken or omission made in good faith in connection with or related to his performance of the duties conferred upon him by the Plan and any orders of the Bankruptcy Court, except to the extent an act constitutes willful misconduct, or fraud.  No Holder of a Claim or Interest or

representative thereof shall have or pursue any Cause of Action against the Plan Administrator or his representatives for taking any action in accordance with the Plan, to implement the provisions of the Plan or any order of the Bankruptcy Court. In all respects the Plan Administrator and his representatives shall be entitled to rely upon the advice of counsel with respect to his duties and responsibilities under the Plan; provided, however, that the foregoing exculpation shall not apply to any act of willful misconduct or fraud.

**7.6     Source of Funding.**

The source of all (a) Distributions, and (b) all other payments, which payments shall be subject to review and approval by the DIP Agent and the Prepetition Agent, under this Plan will be the Plan Administration Funding, the Assets of the Liquidating Estates, and the proceeds thereof, including, without limitation, the Liquidating Debtors' Cash on hand and proceeds from the sale or other disposition of the remaining Assets of the Liquidating Estates.

**7.7     Payment of Plan Expenses.**

The Plan Administrator may employ on behalf of himself, the Liquidating Debtors, and the Liquidating Estates, without Court order, professional persons, as such term is used in the Bankruptcy Code, to assist the Plan Administrator to carry out the duties under this Plan. Except as otherwise provided herein, the Plan Administrator and his professionals shall be compensated at their respective standard hourly rates for time spent administering the implementation of the Plan and the resolution of objections to Claims, if any are asserted, without further motion or application to the Bankruptcy Court, subject until such time as the DIP Administrative Claim and the Prepetition Credit Agreement Secured Claims are paid in full, to review and approval of the DIP Agent and the Prepetition Agent. Compensation to the Plan Administrator and his professionals, as approved by the DIP Agent and the Prepetition Agent, shall be made (a) first, from the Plan Administration Funding, and (b) thereafter, from the remaining Assets of the Liquidating Estates.

**7.8     Plan Administrator Indemnification.**

The Liquidating Debtors shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Plan Administrator and his agents, representatives, attorneys, professionals, and employees (each an "Indemnified Party"), from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, arising out of or due to their actions or omissions with respect to the implementation or administration of the Plan, if the Indemnified Party acted in good faith and in a reasonable manner.

**7.9     Resignation, Replacement, or Termination of Plan Administrator.**

From and after the Effective Date the Plan Administrator or his successor shall continue to serve in his capacity as the sole officer, director, and responsible person of the Liquidating Debtors through the earlier of (a) the date the Liquidating Debtors are dissolved in accordance with the Plan; (b) the Final Resolution Date, and (c) the date the Plan Administrator resigns or is replaced or terminated by the DIP Agent and/or the Prepetition Agent. In the event that the Plan

Administrator resigns or is terminated or is unable to serve, a successor shall be appointed by the DIP Agent and the Prepetition Agent.

**7.10    Effectiveness of Securities, Instruments, and Agreements.**

On the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtors, shall be authorized to take all actions necessary to execute and deliver all Plan Documents issued or entered into pursuant to the Plan, including, without limitation, any agreement entered into or instrument issued or in connection with any of the foregoing or any other Plan Document.

**7.11    Approval of Agreements.**

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of all transactions contemplated by the Plan.  Entry of the Confirmation Order shall constitute approval of such transactions and authorization for the Plan Administrator and the Debtors, as appropriate, to execute and deliver any Plan Documents required thereby.

**7.12    Further Transactions.**

On the Effective Date, the Plan Administrator and the Liquidating Debtors, as applicable, shall execute and deliver any Plan Documents necessary to effectuate and further evidence the terms and conditions of the Plan.

**7.13    Ultimate Dissolution of Debtors; Entry of Final Decree.**

As soon as practicable after the Effective Date, and in no event later than the Final Resolution Date, the Liquidating Debtors shall be dissolved for all purposes by the Plan Administrator without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith; *provided, however,* without the need of any further approval, the Plan Administrator in his discretion may execute and file documents and take all other actions as he deems appropriate relating to the dissolution of the Liquidating Debtors under the laws of Delaware and/or any other applicable states, and in such event, all applicable regulatory and governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Liquidating Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

As soon as is practicable after the Effective Date, and in no event later than the Final Resolution Date, the Plan Administrator shall File an application with the Clerk of the Bankruptcy Court requesting the entry of a final decree closing the Bankruptcy Cases.

**7.14    Retention of Rights to Pursue Causes of Action.**

**7.14.1**   Pursuant to Section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, the Plan Administrator (as the representative of the Liquidating Estates) shall retain and have the exclusive right to enforce against any Entity any and all Causes of Action (including Chapter 5 Causes of Action) that otherwise belong to the Debtors and arose before the Effective Date, including all Causes of Action of a trustee and debtor in possession under the Bankruptcy Code, other than those expressly released or

compromised as part of or pursuant to the Plan or by other orders of the Bankruptcy Court entered prior to the Effective Date. The Causes of Action retained hereby include, without limitation, all claims and Causes of Action listed or referenced in the Schedules, Disclosure Statement and/or in any of the Plan Documents.

**7.14.2** The Plan Administrator (as the representative of the Liquidating Estates) shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by either Debtor against or with respect to all Claims asserted against the Debtors or property of the Debtors' Estates, other than those expressly released or compromised as part of or pursuant to the Plan or by other orders of the Bankruptcy Court entered prior to the Effective Date. No right, Cause of Action, or other Asset shall be deemed waived or otherwise forfeited by virtue of the Debtors' failure to identify such property in the Debtors' Schedules or the Disclosure Statement accompanying the Plan unless otherwise ordered by the Bankruptcy Court.

## ARTICLE 8

## DISPUTED CLAIMS, DISPUTED INTERESTS, AND MISCELLANEOUS DISTRIBUTION PROVISIONS

**8.1 Objections.**

An objection to the allowance of a Claim (other than an Administrative Expense Claim) or Interest shall be in writing and may be Filed only by the Plan Administrator, on behalf of the Liquidating Debtors, at any time on or before the Claims Objection Deadline; *provided, however,* that nothing herein shall prevent a party in interest from objecting to Claims at their own expense. The Plan Administrator, on behalf of the Liquidating Debtors, will prosecute any such objection until determined by a Final Order unless the Plan Administrator (a) compromises and settles such objection to a Claim or Interest by written stipulation subject to Court approval, if necessary, or (b) withdraws such objection. The Plan Administrator shall have the authority to settle or compromise any Claim or Interest that would result in a Distribution of less than $10,000 without seeking approval of the Bankruptcy Court. Any such compromise or settlement that would result in a Distribution of $10,000 or more shall require the approval of the Bankruptcy Court.

**8.2 Amendments to Claims; Claims Filed After the Confirmation Date.**

Except as otherwise provided in the Plan, after the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court and, even with such Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the Face Amount thereof. Except as otherwise provided in the Plan, any new or amended Claim Filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors or the Plan Administrator.

**8.3 Distributions.**

The Plan Administrator shall make Distributions to the holders of Allowed Claims on the terms set forth herein.

On the Final Resolution Date, to the extent there are any remaining Assets of the Estates that constitute Collateral for the Prepetition Obligations, such Assets shall be deemed abandoned and the Prepetition Agent and Prepetition Lenders shall have and maintain all of their rights with respect to such Collateral as provided in the Indebtedness Documents and under applicable law.

**8.4     Distributions on Account of Disputed Claims.**

No Distributions will be made on a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. In determining the amount of Distributions to be made under the Plan to the holders of Allowed Claims on the Effective Date or a Distribution Date, the appropriate Distributions shall be made as if all the Disputed Claims as of such Distribution Date were Allowed Claims in the full amount claimed by the Holders thereof, unless otherwise ordered or estimated by the Bankruptcy Court.

**8.5     Undeliverable or Unclaimed Distributions.**

**8.5.1**     If a check issued by the Plan Administrator for a Distribution under the Plan is not cashed within sixty (60) days after issuance, at the discretion of the Plan Administrator, a stop payment order may be given with respect to the check and at the election of the Plan Administrator, no further Distribution shall be made to such Holder on account of such Allowed Claim. Such Allowed Claim shall be expunged, discharged and forever barred from assertion against the Liquidating Debtors or the Liquidating Estates.

**8.5.2**     If the Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable, no further Distribution will be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's current address; *provided, however*, that the Plan Administrator shall make reasonable efforts to contact the Holder of such Allowed Claim, identify the correct mailing address, and resend the Distribution. All requests for the resend of a Distribution that is returned as undeliverable must be made before sixty (60) days after the date the first Distribution was made which was returned as undeliverable. After such sixty (60) days, the Allowed Claim of such Holder shall be expunged, discharged and forever barred notwithstanding any federal or state escheatment laws to the contrary.

**8.5.3**     No Distribution of less than $100 shall be made by the Plan Administrator.

**8.6     Allocation of Consideration.**

The aggregate consideration to be distributed to a Holder of an Allowed Claim under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of such Allowed Claim and any remaining consideration as satisfying accrued but unpaid interest, if any, thereon.

**8.7     Transmittal of Distributions and Notices.**

**8.7.1**     Any property or notice other than Cash Distributions made through this Plan in forms other than a check which an Entity is or becomes entitled to receive

pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity at the address indicated on any notice of appearance Filed by that Entity or his authorized agent prior to the Effective Date. If no notice of appearance has been Filed, notice shall be sent to the address indicated on a properly Filed proof of Claim or, absent such a proof of Claim, the address that is listed on the Schedules for that Entity. The date of Distribution shall be the date of mailing, and property distributed in accordance with this section shall be deemed delivered to such Entity regardless of whether such property is actually received by that Entity.

8.7.2    A Holder of a Claim or Interest may designate a different address for notices and Distributions by notifying the Debtors or, following the Effective Date, the Plan Administrator, of that address in writing. The new address shall be effective upon receipt by the Debtors or Plan Administrator, as the case may be.

## 8.8    Method of Cash Distributions.

Any Cash payment to be made pursuant to the Plan may be made, at the option of the Plan Administrator, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

## 8.9    Distributions on Non-Business Days.

Any Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

## 8.10    Withholding Taxes.

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Cash Distribution to a Holder of an Allowed Claim shall be treated as part of the Distribution to such Holder. All Holders of an Allowed Claim shall be required to provide any information necessary to effect information reporting and withholding of such taxes. Each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. If a request is made by the Plan Administrator to the Holder of an Allowed Claim to complete forms related to withholding taxes and the Holder of such Allowed Claim fails to comply with the request within sixty (60) days, such Allowed Claim shall be expunged, discharged and forever barred from assertion against the Liquidating Debtors or the Liquidating Estates.

## 8.11    Setoffs.

Except as otherwise provided in the Plan, agreements entered into in connection with the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtors or the Plan Administrator may, but will not be required to, setoff

against any Claim and the Distributions made with respect to the Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights, and other Causes of Action of any nature that a Debtor may hold against the holder of such Claim; *provided, however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of a Debtor, nor any provision of the Plan, shall constitute a waiver or release by such Debtor of any such claims, rights, and other Causes of Action that such Debtor may possess against such Holder. To the extent a Debtor fails to setoff against a Holder of a Claim or Interest and the Plan Administrator seeks to collect a claim from the Holder of such Claim or Interest after a Distribution to the holder of such Claim or Interest pursuant to the Plan, the Plan Administrator shall be entitled to full recovery on its claim, if any, against the Holder of such Claim or Interest.

# ARTICLE 9

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1    Assumption and Assignment of Executory Contracts.

Only Executory Contracts specified as assumed by the Debtors and assigned to the Buyer, including under the Sale Order, and any other Final Order of the Bankruptcy Court authorizing the assumption and assignment of Executory Contracts, shall be deemed assumed or assumed and assigned.

### 9.2    Deemed Rejection.

All Executory Contracts that were not assumed pursuant to a Final Order of the Bankruptcy Court during the Bankruptcy Cases, including under the Sale Order, are deemed rejected as of the Effective Date.

### 9.3    Approval of Rejection.

Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code section 365(a), of the rejection of the Executory Contracts rejected pursuant to the Plan or otherwise during the Bankruptcy Cases.

### 9.4    Rejection of Executory Contracts Non-Waiver

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Rights of Action, or other rights of the Debtors under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan, increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or any unexpired or expired lease.

### 9.5    Rejection Damage Claim Bar Date

If the rejection of an executory contract or unexpired lease pursuant to this Plan gives rise to a Rejection Claim by the other party or parties to such contract or lease, such Rejection Claim,

to the extent that it is timely Filed, shall be classified as a General Unsecured Claim; *provided, however,* any Rejection Claim arising from the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors, the Estates, or after the Effective Date, the Liquidating Debtors and the Liquidating Estates, unless a proof of Rejection Claim is Filed and served on the Debtors or the Plan Administrator, as applicable, by the Rejection Damage Claim Bar Date (which Rejection Damage Claim Bar Date is thirty (30) days after the Effective Date).  The Plan Administrator shall file any objection to a Rejection Claim on or before the Claims Objection Deadline.

**9.6     Indemnification Obligations**

Any obligation of the Debtors to indemnify, reimburse, or limit the liability of any Person, including, but not limited to any officer or director of Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Petition Date, whether arising pursuant to charter, by-laws, contract or applicable state law, shall be deemed to be, and shall be treated as, an Executory Contract and (i) shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and (ii) any and all Claims resulting from such obligations are disallowed under Bankruptcy Code section 502(e).

## ARTICLE 10

## RELEASES; PLAN INJUNCTION; EXCULPATION

**10.1     Releases.**

**10.1.1** <u>Release of the Debtors</u>.  **Except as otherwise specifically provided by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, of (a) all Claims and Causes of Action against, liabilities of, Liens on, obligations of and Interests in, the Debtors and the assets, properties, and operations of the Debtors, whether known or unknown; and (b) all Causes of Action (whether known or unknown, either directly or derivatively through the Debtors) against, Claims (as defined in Section 101 of the Bankruptcy Code) against, liabilities (as guarantor of a Claim or otherwise) of, Liens on the direct or indirect assets, properties, and operations of, and obligations of successors and assigns of, the Debtors and their successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction, or other activity or security, instrument, or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a proof of Claim or Interest was Filed, whether or not Allowed and whether or not the holder of the Claim or Interest has voted on the Plan.**

**10.1.2** <u>Releases by the Debtors</u>.  **Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, in their own capacity and**

4851-8782-0681.4
03/09/2019

as debtors in possession, the Liquidating Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, shall be deemed to have forever released unconditionally, waived and discharged, and hereby is deemed to release unconditionally, waive, and discharge on such date the Released Parties from any and all Causes of Action (including any derivative claims) and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon or related to any act or omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to the Debtors, the Indebtedness Documents or other indebtedness for money borrowed by the Debtors, the filing of the Bankruptcy Cases, the Bankruptcy Cases, the Plan (including any Plan Documents), the Disclosure Statement, the pursuit of approval of the Disclosure Statement or confirmation of the Plan, or the pursuit of consummation of the Plan.  Notwithstanding the foregoing release, no Released Party shall be released from acts or omissions which are the result of willful misconduct or fraud or from any obligations under the Plan or any document, instrument, or agreement executed to implement the Plan.

**10.1.3** <u>Release by Holders of Claims and Interests</u>.  **As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtors, the Liquidating Debtors, and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, event, or other occurrence, taking place on or prior to the Effective Date in any way relating to, or in any manner arising from, in whole or in part, the Debtors, any property of the Debtors, the Indebtedness Documents or other indebtedness for money borrowed by the Debtors, intercompany transactions, the filing of the Bankruptcy Cases, the Bankruptcy Cases, the Plan (including any Plan Documents), the Disclosure Statement, the pursuit of approval of the Disclosure Statement or confirmation of the Plan, or the pursuit of consummation of the Plan, or any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding the foregoing release, no Released Party shall be released from acts or omissions which are the result of willful misconduct or fraud or from any obligations under the Plan or any document, instrument, or agreement executed to implement the Plan.**

**10.1.4** <u>Release Integral to Plan</u>.  **The foregoing release provisions are an integral part of the Plan and are essential to its implementation.  If and to the extent that the Bankruptcy Court concludes that the Plan cannot be confirmed with any portion of the foregoing releases, the Debtors reserve the right to amend the Plan so as to give effect as much as possible to the foregoing releases.**

**10.2    Injunction.**

        **10.2.1**    Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that all Persons and Entities who have held, hold, or may hold Claims against or Interests in the Debtors are, with respect to any such Claims or Interests which relate in whole or in part to any property, including, without limitation, all wells, operations, actions, or inactions of any of the Debtors, are permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting, or continuing in any manner, directly, or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, the Debtors, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors, or any property of any such transferee or successor; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing Entities; (d) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtors, the Released Parties, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any Debtors; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

        **10.2.2**    Furthermore, except as otherwise expressly provided in the Plan, for the consideration described in the Plan, as of the Effective Date, all Persons and Entities who have held, hold, or may hold claims released pursuant to this Article, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date, with respect to any claim released pursuant to this Article, from (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any claim against any Released Party or the property of any of them; (b) seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Released Party or the property of any Released Party; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to any Released Party; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan.  In the event that any Person or Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this section or article if the Plan, then, upon notice to the Bankruptcy Court, the action or proceeding in which the Claim of such Entity is asserted shall automatically be transferred to the Bankruptcy Court for enforcement of the provisions of this section and article of the Plan.

**10.2.3** The Bankruptcy Court shall retain exclusive jurisdiction to interpret and enforce the provisions of Article 10 of the Plan, including, without limitation, to hear and determine any dispute as to whether any claim or Cause of Action asserted by any Person or Entity against any Released Party is subject to the provisions of this Article 10.2 of the Plan.

## 10.3   Exculpation.

Neither (a) the Debtors, their officers, directors, shareholders, agents, employees, or their Professionals (acting in such capacity), nor (b) any of the Released Parties (collectively, the **"Exculpated Persons"**) shall have or incur any liability whatsoever to any Person or Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming, or consummating the Plan, including any settlement referenced therein, the Disclosure Statement, or any Plan Document.  The Exculpated Persons shall have no liability to the Debtors, any Creditor, Interest holder, any other party-in-interest in the Bankruptcy Cases or any other Person or Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including, without limitation, failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects the Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that the foregoing exculpation shall not apply to any act of willful misconduct or fraud.

# ARTICLE 11

# MISCELLANEOUS

## 11.1   Conflicts Between Plan and Confirmation Order.

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

## 11.2   Term of Injunction or Stays.

Unless otherwise provided herein, any injunction or stay imposed by operation of Sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date rather than the Confirmation Date.  Nothing in this section, however, shall be construed as a limitation of the permanent injunctions provided for in this Plan.

## 11.3   Retention of Jurisdiction.

Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

**11.3.1** To determine (a) any Disputed Claims, Disputed Interests, and all related Claims accruing after the Confirmation Date, including, but not limited to, rights and liabilities under contracts giving rise to such Claims; (b) the validity, extent, priority, and

non-avoidability of consensual and nonconsensual Liens and other encumbrances; (c) pre-Confirmation tax liability pursuant to Section 505 of the Bankruptcy Code; and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**11.3.2**  To allow, disallow, estimate, liquidate, or determine any Claim or Interest against the Debtors and to enter or enforce any order requiring the Filing of any such Claim or Interest before a particular date;

**11.3.3**  To approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtors pursuant to Section 365 of the Bankruptcy Code and the terms of this Plan;

**11.3.4**  To determine any request for payment of an Administrative Expense Claim;

**11.3.5**  To determine the allowance and payment of any Professional Claim;

**11.3.6**  To resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim or Interest was Filed, or whether a Disallowed Claim or Disallowed Interest should be reinstated;

**11.3.7**  To implement the provisions of the Plan and entry of orders in aid of Confirmation and consummation of the Plan, including, but not limited to, any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**11.3.8**  To modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

**11.3.9**  To adjudicate any and all Causes of Action that arose in the Bankruptcy Cases prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date, including, but not limited to, any remands of appeals;

**11.3.10** To resolve any disputes concerning whether a person or entity had sufficient notice of the Bankruptcy Cases, the applicable bar dates, the hearing on the approval of the Disclosure Statement as containing adequate information, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

**11.3.11** To determine any and all applications, Claims, Interests, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Interests) in these Cases;

**11.3.12** To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**11.3.13** To seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

**11.3.14** To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, but not limited to, the Confirmation Order;

**11.3.15** To recover all assets of the Debtors and property of the Estates, wherever located, including any Cause of Action under Sections 544 through 551 of the Bankruptcy Code;

**11.3.16** To resolve any dispute relating to the approval and payment of the fees and expenses of the Plan Administrator, or his Professionals;

**11.3.17** To resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

**11.3.18** To hear any other matter not inconsistent with the Bankruptcy Code;

**11.3.19** To resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**11.3.20** To enter the Final Decree closing the Bankruptcy Cases;

**11.3.21** To appoint a successor Plan Administrator;

**11.3.22** To enforce the injunctions granted under this Plan; and

**11.3.23** To approve settlements relating to the above.

## 11.4    Defects, Omissions and Amendment of the Plan

The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan.  The Debtors may, with the consent of the DIP Lender, propose amendments or alterations to the Plan before the Confirmation Hearing as provided in Bankruptcy Code section 1127 if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123 and the Debtors have complied with Bankruptcy Code section 1125.  The Debtors may, with the consent of the DIP Agent, Prepetition Agent, and the Plan Administrator, propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Debtors have complied with Bankruptcy Code section 1125, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

4851-8782-0681.4
03/09/2019

**11.5     Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**11.6     Cram Down.**

If all of the applicable requirements for Confirmation of the Plan are met as set forth in Section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request the Bankruptcy Court to confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of Section 1129(a)(8) of the Bankruptcy Code, on the basis that the Plan is fair and equitable as to the Debtors' Creditors and does not discriminate unfairly with respect to any Impaired Class of Claims against the Debtors that does not vote to accept the Plan as described in the Disclosure Statement. The Debtors reserve the right to alter the treatment of any Class to effectuate a cram down under Section 1129(b) of the Bankruptcy Code.

**11.7     Modification of the Plan.**

The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify this Plan prior to the Confirmation Date. After the Confirmation Date, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan. Further, because the Debtors have separate voting Classes, the Debtors reserve the right to file a new Plan, convert one or both of the Bankruptcy Cases to a case under chapter 7, and/or take such other actions as they deem appropriate.

Notwithstanding any modification rights provided for herein to the contrary, the Plan Administrator shall not take any action with respect to modification of the Plan, without the prior consent of the DIP Agent and the Prepetition Agent.

**11.8     Withdrawal or Revocation of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date; *provided however*, that the Debtors shall not take such action without the prior consent of the DIP Agent and the Prepetition Agent. If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, the Plan shall be of no further force or effect.

**11.9     Notices.**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following:

Counsel for the Debtors:

> **DYKEMA GOSSETT PLLC**
> Deborah D. Williamson
> State Bar No. 21617500
> dwilliamson@dykema.com
> Patrick L. Huffstickler
> State Bar No. 10199250
> phuffstickler@dykema.com
> Danielle N. Rushing
> State Bar No. 24086961
> drushing@dykema.com
> 112 East Pecan Street, Suite 1800
> San Antonio, Texas 78205
> (210) 554-5500
> (210) 226-8395 (Fax)

Office of the United States Trustee:

> James W. Rose, Jr., Trial Attorney
> Office of the United States Trustee
> 615 E. Houston Street No. 553
> San Antonio, Texas 78205
> (210) 472-4640 (ext. 228) (direct)
> (210) 472-4649 (Fax)
> james.rose@usdoj.gov

All notices and requests to Creditors and Interest holders shall be sent to their last known addresses. The Debtors and any Creditors or Interest holders, may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.

**11.10  Governing Law.**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

**11.11  Severability.**

Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void, or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Debtors reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial

4851-8782-0681.4
03/09/2019

determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.12   All Claims.**

This Plan is intended to deal with all Claims against the Debtors of whatever character whether or not disputed, contingent, or liquidated and whether or not allowed by the Bankruptcy Court under Section 502 of the Bankruptcy Code.  However, only those Claims Allowed under Section 502 of the Bankruptcy Code shall be entitled to receive the treatment or Distributions afforded by the Plan.

4851-8782-0681.4
03/09/2019

Dated: March 9, 2019.

                                                RED FORK (USA) INVESTMENTS, INC.
                                                AND EASTOK PIPELINE, LLC


                                                By: _____
                                                Their:_____

<u>Prepared By:</u>

**DYKEMA GOSSETT PLLC**

By: <u>*/s/ Deborah D. Williamson*</u>
Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Patrick L. Huffstickler
State Bar No. 10199250
phuffstickler@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

**ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION**